ELIZABETH ROBERTSON ET AL. v. JOHN G. ROBERTSON ET AL.

[47 South. 675.]

WILLS. *Joint testaments. Revocation. Trusts. Covenant to stand seized. Husband and wife. Clouds on title. Suits to remove.*

Where a husband and wife, by a writing stipulated to be operative both as a conveyance and as a will, agreed that on the death of either all of their property, owned at the date of the writing or thereafter acquired, should belong to the other for life, and, at the death of the survivor, should be divided, by commissioners to be appointed for that purpose, one-half to be allotted to their respective designated kindred:—

(*a*) Construing the instrument as a covenant to stand seized, the wife could not after the death of the husband, in the absence of fraud or mistake, maintain a suit to cancel it as a cloud on title and have the property, real or personal, vested in her; nor

(*b*) Construing the writing as a mutual or joint will, can she revoke it as to the interest disposed of by the deceased husband.

FROM the chancery court of Holmes county.

HON. JAMES F. McCOOL, Chancellor.

Mrs. Robertson, and others, appellants, were complainants in the court below; John G. Robertson and others, appellees, were defendants there. From a decree in defendant's favor complainants appealed to the supreme court.

William A. Robertson and Elizabeth Pool were married in 1865. They lived together for many years, and acquired property, consisting principally of farm lands. In 1897, they, the husband then being eighty-one and his wife seventy-two years of age, and neither having a child or children, entered into the following written agreement:

"This agreement made this 27th day of October, 1897, between William A. Robertson and his wife, Elizabeth Robertson, of Holmes county, Mississippi, witnesseth: That we mutually agreed that during our lives any property that we now own or

may hereafter acquire, shall, at the death of either, descend to the other for his or her life, that at the death of the survivor, all of said property shall be divided into two equal parts, half to descend and be inherited by the children of John G. Robertson, and the other half to descend and be inherited by the two nieces of Mrs. Elizabeth Robertson, Mrs. Laura Cullifer, and Mrs. Sarah Anderson, who reside at Halifaxton, Halifax county, North Carolina. If we do not divide the lands into two equal parts during our life time, then after the death of the survivor, Mr. John G. Robertson, or the guardian of his children, shall appoint one disinterested commissioner and Mrs. Cullifer and Mrs. Anderson shall appoint another disinterested commissioner and these two shall appoint a third and these three or a majority shall divide the land and personal property according to valuation and each set of heirs shall have the control and ownership of their half. If necessary for a fair and equal division, the commissioners may sell all or a part of the personal property and divide the proceeds, the report of the commissioners shall be entered of record and operate as a deed.

"It is mutually agreed that this instrument shall operate as a conveyance and as a will and that John G. Robertson is appointed as guardian of his children and executor of personal property subject to its division by commissioners as aforesaid.

"Witness our signatures the day and year aforesaid.

"W. A. ROBERTSON.

"ELIZABETH X. ROBERTSON.

"Attest:—J B. HOUSE, JAMES J. SHANKS.

"State of Mississippi, Holmes County. Personally appeared before me, the undersigned justice of the peace, W. A. Robertson and his wife, Elizabeth Robertson, who severally acknowledged that they signed and delivered the foregoing instrument on the day and year therein named and in the presence of the attesting witnesses who signed the attestation in their presence.

"Witness my official signature this November 1st, 1897.

"W. H. PIERCE, Justice of the Peace."

Soon after the execution of this agreement, which had been properly recorded, Mr. Robertson died. Mrs. Robertson continued in the use and occupancy of the property for several years, and John G. Robertson, a nephew of her husband, managed her affairs. Afterwards the two nieces of Mrs. Robertson died, and some of their children came from North Carolina to live with her, and shortly after their arrival this suit was filed by Mrs. Robertson and her nieces' children against John G. Robertson and his children to cancel the agreement entered into between Mr. and Mrs. Robertson. The bill alleged that Mrs. Robertson believed she was executing a will which could be revoked by her at pleasure, and that, being an illiterate woman, she was ignorant of the effect of the agreement. The object of the bill was to revoke the agreement and cancel the title of John G. Robertson's children to a one-half interest in the property so that the entire estate would, by operation of law, become vested in Mrs. Robertson, the widow of William A. Robertson, deceased.

*Tackett & Elmore,* for appellants.

The instrument under discussion is a will. In construing an instrument of equivocal character, the purpose is to give the instrument that construction intended by the maker, as shown by the instrument itself and the circumstances surrounding its execution. Adopting this rule, in interpreting the instrument before us, an examination of the circusmtances surrounding its execution shows that the parties who executed the instrument intended it as a will.

In the old case of *Green v. Proud,* 1 Mod. 117, 3 Keb. 310, the paper had striking characteristics of a deed; but the court said: "Here being directions to make a will and the person sent for with that end in purpose, this is a good will." Speaking of this case, Jarman (1 Bigelow's Ed.), 19, says: "The court seems to have been influenced by the circumstances that the person who prepared it was instructed to make a will."

Searching the instrument itself, for the intention of the parties, there is one feature which might be thought to operate against our contention; and that is, that the instrument was acknowledged and put upon record. But under the circumstances, that feature loses its force, for the reason that it appears that Mr. Robertson evidently believed that a will should be recorded.

In *Cunningham v. Davis,* 62 Miss. 266, Chief Justice Campbell held an instrument in the form of a deed, which was acknowledged before a justice of the peace and characterized in the writing itself as a "deed of conveyance" to be a will, showing that the acknowledgment amounts to nothing as against the testamentary intention. It would be especially so in this case, where the parties undoubtedly believed that a will should be placed on record.

The instrument itself says: "It shall operate as a conveyance and as a will." The designation of the instrument as a conveyance is not controlling, as shown by *Cunningham v. Davis,* above referred to. An ordinary will may be called a conveyance. In *Meek v. Thornton,* 36 Miss. 190, a will is referred to as "a form of conveyance." In *Gould v. Mansfield* (Mass.), 4 Am. Rep. 573, the court uses this language: "If we look at the character of the act to be done, we find that a will is considered in the nature of a conveyance by way of appointment." On account of the conflicting characteristics of a deed and a will, one instrument embracing both forms of conveyance, is certainly a novelty. There may be cases where the instrument operates as a deed and as a will. In such cases, however, that part of the instrument operating as a will, and that part operating as a deed, should at least be sufficiently distinct and separate, so that they could be distinguished with some degree of certainty.

It will also be noticed that there are no operative words conveying any present interest. The operative words, without a single exception, are all in the future tense.

If this instrument be construed to be a deed, it unquestion-

ably by the strength of its very terms, purports to convey the entire property owned by the makers at the time of its execution. Not only that, but it conveys all the property to be acquired by them in the future. The exact words of the instrument on this point are: "We mutually agreed that during our lives any property that we now own or may hereafter acquire shall," etc.

In *Sartor v. Sartor,* 39 Miss. 761, the instrument contained the following words: "For the love and affection that I have for my wife, Harriett N. Sartor, I give unto her all my property, real and personal, during her widowhood."

The court will observe that the clause there passed upon does not go so far as to include after-acquired property as does the instrument in this case. In construing that instrument, the court at page 772, referring to the clause above quoted, says: "But the terms of the instrument render it extremely uncertain whether the maker did not design to vest the property immediately in Mrs. Sartor, but to postpone the enjoyment until after his death. This is unquestionably the natural import of the language used . . . If, however, we adopt this construction, and in consequence determine the writing to be a deed and not a will, the effect of the instrument, if valid for that purpose, is to strip the grantor of his entire estate, real and personal. And for that reason, if for no other purpose, it is highly improbable that the maker intended the instrument to have that effect.

In *Crooker v. Smith* (Ala.), 10 South, 258, the court in construing a doubtful instrument executed by a husband in favor of his wife says: "By reference to the judgment, it will be observed that the right or interest which it purports to pass, is not only of all the property, real and personal, which the maker then owned, but also of all that he might thereafter own . . . The inclusion of after acquired property seems to indicate the intention that the instrument should not pass any present right or interest."

In *Crooker v. Smith,* a lifetime estate was specifically re-

served to the grantor and the instrument recited the consideration of one dollar and the natural love and affection, and the operative words were "I hereby give, convey and confirm."

This writing under consideration says: "If we do not divide the lands into two equal parts during our lifetime" commissioners shall divide the land and personal property. The above quoted clause conflicts with the position that this instrument passed any present interest. If a remainder vested at the time, it vested under conditions expressed in the instrument alone, since the instrument must be construed most strongly against the grantors. There is no reservation to them of a right to divide the property and if a remainder vested, the makers would have had no right as against the remaindermen to divide the property into what the makers might consider two equal parts.

The fact that there was no description of the land numbers is also some indication that the parties did not intend the instrument to have the effect of a deed. Deeds usually describe land by land numbers; wills, as a general rule, do not.

The appointment of an executor is strong in its indication of what the parties intended this instrument to be. An executor is one to whom the carrying out of the directions of a will is confided. We have never heard of such a thing as an executor of a deed. A lawyer gave this instrument its legal form, and would a lawyer have appointed an executor of a deed? Or would a lawyer have attempted to appoint an executor by a deed?.

The appointment of a guardian is equally strong as an indication that the instrument was intended as a will.

We further contend that the instrument would be ineffectual to convey any after acquired land, since there is no covenant of warranty contained in it.

As a will this instrument is not binding upon Elizabeth Robertson.

The general rule as to revocation of joint or mutual wills is

announced as follows: "A mutual will is revocable by the testator at any time prior to his death. And this is so, though he survives the other testator, provided he takes no advantage under the other will.

While no legal obligation not to revoke is created by the mere execution of mutual wills, yet, if the wills are executed pursuant to a contract and either testator revokes without notice, the other may compel the specif l performance of the contract, or may recover damages for a breach of a contract." 30 Am. & Eng. Ency. Law, 621.

*A. M. Pepper,* for appellees.

Assuming for the sake of argument that the instrument in controversy has the requisites of a valid will, the same was not revoked by Mr. Robinson during his lifetime and consequently, as to the one-half interest of Mr. Robertson in the property given to these appellees (defendants below), the future action of Mrs. Robertson and her grantees (appellants here and complainants below), as to her one-half interest in same should in no wise affect appellees; provided Mrs. Robertson so uses her life estate therein in such a manner that appellees' vested remainder interest shall not be destroyed or defeated.

As a matter of fact the writing is good as an agreement, as a contract and compact, deed of conveyance, and as a will, and may be so construed together, as laid down by Professor Bourland in his recent work on the "Law of Wills and Testament," in which he says on page 18, "A will, lease, and deed made at the same time may be construed together," this rule is also laid down in *Jack v. Hooker,* 71 Kan. 652, and a number of other cases there cited.

Fletcher, J., delivered the opinion of the court.

The testimony of Mrs. Elizabeth Robertson having been properly suppressed, no satisfactory evidence remains upon which we can say safely that the property in controversy was the

sole property of appellant Mrs. Robertson. Nor can we hold that the agreement made between the parties should be avoided on account of mistake, undue influence, or fraud. We think the chancellor was correct in holding that the agreement was fairly entered into and represented the wishes of the parties at the time. It only remains, therefore, to determine whether, giving the agreement its full legal effect, the bill can be maintained. This agreement will be set out in full by the reporter. The bill seeks to cancel this instrument as a cloud upon the title of complainants, and was manifestly framed upon the theory that the writing conveyed some present vested estate or interest to the appellees, but that on account of the fraud in its execution it should be now set aside and held for naught. It is now sought to have the instrument declared a will, and therefore revocable at the pleasure of appellant Mrs. Robertson. If the instrument be construed as a compact, or, perhaps more accurately, a covenant to stand seised to the use of the grantees named, which construction seems to us the correct one, then clearly the suit must fail. On the other hand, if the instrument should be held to be a mutual or even a joint will, it is clear that the surviving testator cannot revoke the will as to the estate belonging to the deceased, which became vested at the death of the testator. *In re Cawley's Appeal,* 136 Pa. 628, 20 Atl. 567, 10 L. R. A. 93.

In any view of the matter, the decree must be affirmed.

*Affirmed.*