ASHER *v.* HART.

Division B.   Dec. 10, 1951.

No. 38127  (55 So. (2d) 447)

750

Forrest B. Jackson, for appellant.

Wells, Wells, Newman & Thomas, for appellees.

**Ethridge, C.**

This case involves the question of whether a beneficiary under a mutual, reciprocal will is precluded and estopped from claiming under it because of the adjudications in a final probate decree of the estate of the first

decedent under the will, which decree was approved by the beneficiary and the survivor under the will.

Lee R. Hart and wife, Mrs. Ida A. Hart, were residents of Jackson, Mississippi. On July 2, 1940, they executed a "mutual will". Under one of its items, if Lee Hart's wife survived him, he devised and bequeathed all of his property unto her. Under Item 4, if she did not survive him, certain contingent bequests and devises took effect under Lee Hart's will, and appellant, John Hart Asher, was named as residuary devisee and legatee. Under Item 5, it was provided that if Lee Hart survived Mrs. Ida A. Hart, she bequeathed and devised all of her property to him. Under Item 7, if Lee Hart did not survive Ida Hart, then appellant was appointed executor and Ida Hart's entire estate "is hereby given, devised and bequeathed exactly in the same manner" as was provided in Item 4, referred to above, which paragraph provided for the disposition of the estate of Lee Hart in the event Ida Hart should not survive him.

Lee R. Hart died on December 21, 1943, and as the will directed, his wife, Mrs. Ida A. Hart, and appellant, John Hart Asher, were made executors. After administering the large estate, Mrs. Ida A. Hart and appellant, John Hart Asher, as executors of the estate of Lee R. Hart, filed with the chancery court a final account, petition for its approval and for construction of decedent's will. Among other things, the petition averred that they were "entitled to have said last will and testament construed and the rights of each of the parties named therein defined by the court. * * *" The petition further prayed: "The petitioners charge that said last will and testament of the decedent should be construed in the light of the circumstances surrounding the execution thereof, and petitioners should be advised as to whether or not Mrs. Ida A. Hart is the sole beneficiary of this estate; and whether or not any of the contingent legacies and bequests therein provided are in anywise effective

or operative subject to the life interest of the widow of the decedent therein. * * *,,

It listed the various contingent legatees and devisees in the will, including appellant, and asked that they be made parties to the petition and be required to "then and there assert any claim or interest which they may have under the terms of the last will and testament under the circumstances stated." All of these contingent beneficiaries were made parties defendant individually, including appellant. Mrs. Hart was made an individual party defendant.

In its final decree, the court approved the final account of the executors and further adjudicated as follows: "* * * it further appearing to the court that Mrs. Ida A. Hart, one of the executors of the estate, and sole devisee thereof under the Last Will and Testament of the decedent, has settled with all contingent devisees and legatees under the provisions of the mutual will executed by the decedent and said Mrs. Ida A. Hart, his wife, and that Mrs. Ida A. Hart is now the owner in fee simple absolute of the entire estate of the decedent and no need exists for a construction of said will; * * * (2) That Mrs. Ida A. Hart is the owner in fee simple absolute of the entire estate of the decedent, Lee R. Hart, and she is declared vested of record with the ownership of all property of said decedent of which he died seized and possessed, wheresoever situated, and this decree shall operate as a conveyance thereof to her; * * *,,

This decree was executed by the chancellor on June 7, 1945 and at the end thereof appeared the following:

"Approved:

/s/ Harold Cox

Attorney for Executors and
John Hart Asher individually

/s/ Max Haas

Attorney for Mrs. Ida A.
Hart individually."

The executors obtained from Mrs. Ida A. Hart a receipt of all of the assets of the estate and the chancellor discharged the executors, finding that they had delivered ''all of the assets of the estate in their hands to Mrs. Ida A. Hart as sole beneficiary thereof. * * *''

After her husband's death Mrs. Hart moved to St. Louis and lived with her sister. On August 18, 1945, Mrs. Ida A. Hart executed a will, revoking all previous wills, and devising and bequeathing her estate to two of her nieces and to a sister and her husband. She died in June, 1949. The 1945 will was probated in St. Louis, and was subsequently admitted to probate in the Chancery Court of Hinds County. The executors under the 1945 will had petitioned the court to revoke the probate in 1949 of the 1940 will of Ida A. Hart, and this was done without prejudice to the rights of John Hart Asher to file a separate suit seeking to enforce the mutual will of 1940.

In December, 1949, appellant filed a petition for the revocation of the probate of the 1945 will of Mrs. Ida A. Hart, and for the adjudication that Mrs. Hart had accepted the estate of her husband under the 1940 will and could not revoke it. The Court was asked to establish a trust in the estate of Mrs. Hart with appellant as beneficiary, or in the alternative, for specific performance of the contract, or damages for breach of the 1940 contract. The petition charged that the agreement of the parties to the 1940 mutual will was that upon the death of either of them the survivor was to be bound irrevocably by the terms of the mutual will. The proceedings in the estate of Lee R. Hart in 1943-1945 were attached as exhibits to appellant's petition.

To this petition appellees, claiming under the 1945 will of Mrs. Ida A. Hart, filed a general demurrer, the basis of which was that the final decree of June 7, 1945 in the estate of Lee R. Hart, and quoted above, was a consent decree approved individually both by Mrs. Ida A. Hart and by appellant; that it was res judicata as to

any rights appellant had under the 1940 will; and that by such final decree, with the consent of appellant, the court adjudicated that Mrs. Ida A. Hart was the sole legatee and devisee under the will, that Mrs. Ida A. Hart had settled with all contingent devisees and legatees and that she was "the owner in fee simple absolute of the entire estate of the decedent"; and that, therefore, appellant is estopped and precluded from asserting any further rights under the 1940 will. Appellees' demurrer was sustained, and the present appeal is from that order.

██ ██ Both appellant and appellees agree that a mutual will cannot be revoked unilaterally, where a survivor has accepted benefits under it. Robertson v. Robertson, 1909, 94 Miss. 645, 47 So. 675, 136 Am. St. Rep. 589. But the issue presented here is the narrow one of whether the consent decree of June 7, 1945 is a conclusive adjudication as to the entire effect of the mutual will of 1940, and whether by its terms appellant is precluded from asserting any further rights under the 1940 instrument. We have concluded that the chancery court was correct in sustaining appellees' demurrer to appellant's petition.

The general principles with reference to the stated issue are well established. They are stated in 57 Am. Jur., Wills, Sec. 705, as follows: "Release or Abandonment of, or Estoppel to Assert, Rights under Contract—

██ ██ Rights under a survivorship contract between husband and wife may, of course, be lost by mutual abandonment of the contract. Such an abandonment may occur by conduct as effectively as by words or written agreements.

██ ██ "A release by a third-party beneficiary of a contract between husband and wife for the execution of separate wills, whereby such beneficiary purports to discharge all claims against the surviving testator, constitutes a defense against a claim made by such beneficiary against the estate of the surviving testator based upon the

contract, at least where the beneficiary had knowledge of the contract when he executed the release."

A similar rule is stated in 57 Am. Jur., Wills, Sec. 724, as follows: ██ "The doctrine of res judicata which, briefly stated, is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction, applies, of course, in litigation conducted to determine rights and liabilities under a contract for the execution of a will or wills which are strictly reciprocal in their provisions or which contain bequests for designated third persons. ██ One claiming under an alleged agreement to execute separate wills containing reciprocal provisions and provisions for the benefit of claimant is concluded by a prior judgment in an action to which he was a party in which such matter, although not expressly determined, was comprehended in the issues and could have been decided, where the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the judgment in the first."

To the same effect is an exhaustive annotation on the subject in 169 A. L. R. 9, at pages 38, 81. We have examined the cases cited in these authorities and in the briefs, and have found none specifically in point. Both sides seem to concede this. Necessarily the scope of estoppel by judgment depends upon the facts of the particular case. The general subject has been recently discussed by this Court in Etheridge v. Webb, 1951, 210 Miss. 729, 50 So. (2d) 603. We think that the scope of the facts and issues adjudicated in the consent decree operated to remove any further rights appellant might have under the terms of the 1940 will, and therefore to leave Mrs. Ida A. Hart free to revoke the same and to execute the 1945 instrument.

■■■ The consent decree was based upon a petition of appellant and Mrs. Ida Hart expressly asking the court to construe the will and "the rights of each of the parties named therein," and to determine "whether or not Mrs. Ida Hart is the sole beneficiary of this estate; whether or not any of the contingent legacies and bequests therein provided are in anywise effective or operative subject to the life interest of the widow of the decedent therein." The petition indicates that the executors had in mind several problems in a construction of the will, which they wanted the court to decide. These included whether the will was a mutual will or was two separate wills combined in the same instrument; if it was a separate will, whether the survivor had a right vested with remainder over, after payment of specific legacies, to the residuary legatee and devisee, appellant, or whether Mrs. Hart would take a full fee simple estate without restrictions as to disposition; whether the survivor would have the right to revoke it and make a different disposition of the property; and whether appellant had any vested interest in the corpus of the estate. These and other questions were manifestly presented to the court for construction and interpretation.

The phrase in the petition and decree, "contingent devisees and legatees", may have been a misnomer for the legatees under Items 7 and 4 of the will. Those persons were in fact devisees and legatees of Mrs. Hart under the 1940 will. The petition and decree manifestly referred to them, and included among them, was the appellant, John Hart Asher. All of them were parties defendant to the petition, including appellant. Hence the reference in the consent decree to such persons clearly includes the appellant.

The stated questions in the construction of the 1940 will are serious ones which the petitioners asked the court to construe, and the court expressly adjudicated in the consent decree that Mrs. Hart had "settled" with appellant "under the provisions of the mutual will", in

effect for all of appellant's claims thereunder. Appellant, individually, approved the decree, as to both form and substance. Appellant is bound by that adjudication.

Appellant says that the consent decree must be considered in the light of the particular proceeding, and that the only issue there was the construction of the separate will of Lee Hart, so as to determine to whom the executors should distribute the assets of the estate. He says that the decree did not determine whether there was a contract or agreement between Lee and Ida Hart; that this issue must be raised with reference to the estate of Ida Hart, and the court was not there concerned with limitations on her capacity to make a will.

However, appellant himself in the petition asked for a construction of the will and of the rights of the "contingent devisees and legatees". The court responded by executing the consent decree with appellant's approval. We think that it was necessary and proper to do that at that time. The will was an entirety for purposes of determining a final distribution of the property and the rights of the beneficiaries in the mutual will. Apparently the executors thought it was. The petition indicates this, and the approved consent decree found and adjudicated in effect, at the request of appellant, that the mutual wills were so interrelated that it was necessary to determine the rights under both. The legatees and devisees under the mutual will of Mrs. Hart and her husband were all parties to the proceeding, and if the 1940 will was not subject to revocation by Mrs. Hart, they had very definite rights in an irrevocable instrument. Yet the court adjudicated that Mrs. Hart had settled with appellant and the other beneficiaries "under the provisions of the mutual will" and that she was "now the owner in fee simple absolute of the entire estate of the deceased." That phrase signifies an absolute inheritance "clear of any condition, limitation or restriction", and "absolute and unqualified ownership". Boxley v.

Jackson, 1941, 191 Miss. 134, 2 So. (2d) 160, 163; Whelan v. Johnston, 1942, 192 Miss. 673, 6 So. (2d) 300, 303.

Hence we conclude that the rights of all beneficiaries, including appellant, under the mutual will (as an entirety) were adjudicated by the consent decree of 1945, and that the chancery court was warranted in considering that the rights of all parties concerned with the mutual will were so interrelated that their rights could properly be determined in that decree.

Appellant concedes that Mrs. Hart received a "fee simple absolute" title under her husband's will and that she could have conveyed during her lifetime an unencumbered title to any purchaser, but he says that he received the remainder of her estate at her death under the 1940 will. Appellant argues that the decree was speaking of her "fee simple absolute" title in that sense of alienability during her lifetime, but that it did not determine whether there was an irrevocable contract between Lee and Ida Hart. Appellant suggests as an analogy a home owner who has a "fee simple title" which is nevertheless subject to a mortgage. Yet we have no reason to think that the parties who approved the decree and the court who executed it were thinking of that phrase in such a loose, popular sense. On the contrary, the consent decree executed by the learned chancellor appears to have been carefully drawn by able attorneys and to have expressed in precise terms a particular interest which Mrs. Hart was receiving. Moreover, any contract between Lee and Ida Hart was memorialized in the written, mutual will, and the court was construing the rights of all the parties named in it who were also parties to the petition. Rights under the contract were rights under the will, and we think they were interrelated, both textually and intentionally, and were properly construed together by the consent decree.

It should be noted that the courts favor family settlements after the death of the person from whom an estate is derived. Williams v. Williams, 1939, 185 Miss.

53, 187 So. 209, 213, is illustrative of this, and involved a family settlement and estoppel of certain heirs by a prior consent decree. A family agreement between the three heirs, also legatees and devisees of testator, was executed to set aside directions of the will concerning distribution of the estate. This obviated expensive and lengthy litigation. In the administration of the estate, all of the heirs petitioned the chancery court to approve the agreement and the employment under it of complainant, one of the heirs, to assist in the managing of the extensive properties of the estate. The court by order approved this contract. Later, however, the administratrix refused to pay complainant as agreed under the contract approved by the court, so complainant brought the present action for his stipulated salary. A general demurrer to the bill on the ground that the contract was void was overruled; it was held to be enforceable.

The Court said: ''The mutual promises of the parties here constitute sufficient consideration, and we stress the fact that these family agreements made after the death of the decedent from whom the estate is derived are favored by our Court. In addition to what we have already said, if the heirs at law, after a will had been rejected, all being adults, had appeared in court, as they did in this case, and procured an order which was entered by the court in this case in so far as their interest in the estate is concerned, they were bound thereby if there had been no family agreement, the court having adjudicated the employment of Williams as reasonable and necessary. This petition was not only a ratification of the family settlement but created an estoppel as to their interest in the estate, and there is no sound reason why they should not be bound by the agreement entered into in court for incurring this expense * * *.''

For all of the above reasons, we think that the consent decree of 1945 was a final decree, finally and forever adjudicating and fixing the rights of all of the devisees and legatees under the mutual will, and adjudicating

that they had no further rights thereunder, and that the unqualified title to the estate of Lee R. Hart was vested in his wife, who therefore had the power to revoke the 1940 will.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated, the judgment of the court below is affirmed.

**Hall, J.,** took no part.