SLAUGHTER *v.* GAINES, et al.

April 19, 1954

No. 39093 61 Adv. S. 22 71 So. 2d 760

*James T. Bridges,* Belzoni, for appellant.

*E. M. Yerger,* Clarksdale; *Sidney T. Roebuck,* Newton, for appellee.

KYLE, J.

C. H. Gaines died on January 5, 1953. His last will and testament, dated October 29, 1952, was duly admitted to probate by a decree of the Chancery Court of Coahoma County on January 8, 1953, and Charles Louis Gaines and Roy Chapman thereupon qualified as executors of the will.

In his will the testator devised and bequeathed his property as follows:

"KNOW ALL MEN BY THESE PRESENTS, That I, C. H. Gaines, of Coahoma County, Mississippi, being of sound and disposing mind and memory and over and above the age of twenty-one years do hereby make, publish and

declare this as my last will and testament, hereby revoking any and all wills and testaments whensoever or wheresoever made.

"ITEM I: It is my desire that all my just debts be paid as soon after my death as possible.

"ITEM II: I hereby name and appoint Roy Chapman of Rena Lara, Mississippi, and Charles Louis Gaines of Newton, Mississippi, as joint executors of this my last will and testament and request that they not be required to give any bond as such nor make any accounting to any court.

"ITEM III: With the exception of my brother G. E. Gaines, I hereby will, devise and bequeath all the property of every kind, character and description, both real and personal, of which I may die seized and possessed to my heirs at law according to the laws of descent and distribution of the State of Mississippi. I have specifically excluded my brother G. E. Gaines from this devise and bequeath because he has been well provided for and not because of any disfavor or ill will.

"IN TESTIMONY WHEREOF, I have signed, sealed, published and declared this as my last will and testament in the presence of Jay Gore, Jr. and E. Cage Brewer, Jr. whom I have requested to become attesting witnesses hereto, on this the 29 day of October, 1952.

/s/ *C. H. Gaines*
C. H. Gaines

Witness:
/s/ Jay Gore, Jr.
/s/ E. Cage Brewer, Jr."

C. H. Gaines was never married. Neither his father nor his mother was living at the time of his death. He left surviving him one half brother, G. E. Gaines, and one half sister, Mrs. Emma G. Slaughter, the appellant herein; also one full brother, Walter J. Gaines, and one full sister, Mrs. Lillie G. Pierce, and one full brother,

William Gaines, who is now deceased. William Gaines left surviving him at the time of his death, a widow and three children. C. H. Gaines, the testator, had one other full brother, Andrew Gaines, who had died in 1927. Andrew Gaines left surviving him his wife and five children, all of whom were living at the time of the death of the testator.

On February 5, 1953, the executors filed a petition in the chancery court asking that the court construe the will of C. H. Gaines, deceased, and determine who were the heirs-at-law of the testator entitled to share in the distribution of the estate under the terms of the will. All of the above named kindred were made parties defendant to the petition.

The petition was heard before the chancellor in vacation on February 21, 1953. The only witness who testified during the hearing was the attorney who had prepared the will for the testator and who had attested the same as one of the subscribing witnesses. The witness testified that during the conference he had with the testator before the will was prepared the testator mentioned each of his brothers and sisters by name; that he mentioned G. E. Gaines as his brother; and that he mentioned Mrs. Slaughter as his sister; that he never referred to either of them as his half brother or half sister. He stated that the testator instructed him to exclude G. E. Gaines specifically. "And he gave as a reason for it that he wanted his other brothers and sisters to share, and that he thought that G. E. Gaines was well enough fixed to take care of himself."

In answer to a question propounded to him by the court, the witness stated that he knew nothing about the testator having a half sister and a half brother—"he never mentioned that to me."

The chancellor held that under the terms of the will and the statutes of descent and distribution only the brothers and sister of the whole blood and the children

of the testator's deceased brother, Andrew Gaines, were entitled to share in the estate; that the half brother, G. E. Gaines, was excluded under the expressed terms of the will, and that the half sister, Mrs. Emma G. Slaughter, was excluded under the laws of descent and distribution, which control in the case under the terms of the will. The chancellor ordered that the estate, after the payment of the cost of administration, be divided into four equal parts, and that one part be allotted to Walter G. Gaines, and that one part be allotted to Mrs. Lillie G. Pierce, and that one part be allotted to and be divided among the surviving children and the granddaughter of William Gaines, deceased, and that the remaining part be allotted to and be divided among the five children of Andrew Gaines, deceased.

From that decree Mrs. Emma G. Slaughter has prosecuted this appeal.

The only question presented for our decision is whether or not Mrs. Emma G. Slaughter, the half sister of the testator, was entitled to share in the estate under the terms of the will.

The appellant does not contend that she would have been entitled to inherit as an heir-at-law of C. H. Gaines, deceased, if C. H. Gaines had died intestate. The appellant does not contend that she would have been entitled to share in the estate under the terms of the will if no mention had been made of G. E. Gaines, who was referred to in the will as the testator's brother. The appellant's claim to a share in the estate under the terms of the will is based upon the language used by the testator, in Item III of the will, wherein he devised and bequeathed his property of every kind to his heirs-at-law, with the exception of his brother G. E. Gaines, who was already well provided for. The appellant's claim rests entirely upon the doctrine of gift by implication.

The principle relied upon to support the appellant's claim is stated in 57 Am. Jur., p. 840, Wills, par. 1271, as follows:

"If a testator, in describing a group or class whom he wishes to remember in his will, expressly excludes from membership therein a designated person who, as a matter of fact, would not come within the meaning of the words used to denominate the class, the question arises whether an intention is shown that the class should be considered as embracing other persons who come within the actual status or position of the person excluded. The authorities appear to support the conclusion that the fact that a testator has made such an exception, while some indication of a supposition that other persons of a description similar to the one expressly excluded should be included in the class, is not necessarily conclusive."

The doctrine of gift by implication was fully considered by this Court in the case of Ball v. Phelan, et al., 94 Miss. 293, 49 So. 956, 23 L. R. A. (N. S.), 895. In that case the Court quoted with approval a statement of Vice Chancellor Van Vleet in Bishop v. McClelland's Ex'rs, 44 N. J. Eq. 450, 16 A. 2, 3, 1 L. R. A. 551, as follows:

"A bequest may undoubtedly arise from implication, but, to warrant the court in so declaring, there must be something more than conjecture to support its declaration. The implication must be a necessary one. The probability of an intention to make the gift implied must appear to be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind. A construction in favor of a gift by implication should never be adopted, except in cases where, after a careful and full consideration of the whole will, the mind of the judge is convinced that the testator intended to make the gift."

The general rule relating to bequests or devises by implication is stated in 57 Am. Jur., p. 782, Wills, par. 1192, as follows:

"A bequest or devise may be made by mere implication, unless the implication violates public policy or some established rule of law, but to raise such implication it must be necessary to do so in order to carry out a manifest and plain intent of the testator which would fail unless the implication is allowed. Gifts by implication are not favored, and cannot rest upon conjecture. Such a gift will not be inferred from mere silence, but must be founded on expressions in the will, and is only admitted as a means of carrying out what the testator appears on the whole to have really meant, but failed somehow to express as distinctly as he should have done."

In the case of Bell, et al. v. Dukes, 158 Miss. 563, 130 So. 734, the Court said that in order for a devise to arise by implication, the probability of an intention to make the devise must appear to be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind. The implication must be a necessary one. A construction in favor of the devise by implication should never be adopted except in cases where, after a careful and full consideration of the whole will, the mind of the judge is convinced that the testator intended to make the devise.

But having in mind these rules of caution, the Court must not lose sight of the fact that the fundamental rule governing the construction of all wills is to ascertain what the intent of the testator was. Ball v. Phelan, et al., supra; Cross v. O'Cavanagh, 198 Miss. 137, 21 So. 2d 473; Yeates v. Box, et al., 198 Miss. 602, 22 So. 2d 411; Brumfield v. Englesing, 202 Miss. 62, 30 So. 2d 514. And, as stated by the Court in its opinion in Ball v. Phelan, et al., supra, "This intent must be gathered * * * from the language used in the will, and by this is meant that such intention shall be gathered from the four corners of the instrument; that is to say, from the whole will—the whole frame of the will; the whole scheme of the testator manifested by the will, taking into consider-

ation and giving due weight to every word in the will; and, when once the actual intent of the testator at the time of the making of the will has been in this way ascertained, all minor, subordinate, and technical rules of construction must yield to this paramount intent thus ascertained."

 It is also well settled that a will should be construed in the light of the circumstances surrounding the testator at the time the will is executed. Schlottman v. Hoffman, 73 Miss. 188, 18 So. 893, 55 Am. St. Rep. 527; Countiss v. King, 149 Miss. 70, 115 So. 109; Strickland v. Delta Inv. Co., 163 Miss. 772, 137 So. 734.

After a careful examination of the will that we now have before us, it seems clear to us from the language used in Item III of the will that the testator intended to include the appellant in the group or class described as "my heirs at law according to the laws of descent and distribution of the State of Mississippi." The conclusion that we have arrived at does not rest upon conjecture, but is founded on expressions in the will. The testator had never been married. His father and mother were dead. It is clear from the will itself that he intended that his property should go to his brothers and sisters and the children of his deceased brother. It appears from the language used that the testator was not aware of the fact that the statutes of descent and distribution made a distinction between the kindred of the whole blood and the kindred of the half blood. None of the kindred whom the testator had in mind at the time the will was executed is mentioned by name in the will, except G. E. Gaines, who is referred to not only once, but twice, as "my brother G. E. Gaines." G. E. Gaines, being a half brother, was not an heir-at-law of the testator. But it is clear that the testator thought that G. E. Gaines was one of his heirs-at-law, and that if G. E. Gaines was to be excluded from sharing in the estate under the will, he must be expressly excepted from the group described

by him as "my heirs at law." What other reason could the testator have had for excepting his "brother G. E. Gaines" by name from the group thus described?

As stated by this Court in Ball v. Phelan, et al., supra, the intent of the testator must be gathered from the whole will, "taking into consideration and giving due weight to every word in the will." And in seeking to ascertain the intent of the testator in this case, we cannot brush aside that portion of the language used by the testator which indicates an intention on his part to include as members of the group whom he describes as "my heirs at law" the brother and sister of the half blood.

Even though the testator may have described the group whom he wished to remember in the will as "my heirs at law," if in doing so he has added other words which indicate that he meant to include in that group whom he has described as "my heirs at law" his brother and sister of the half blood, the term should be construed so as to carry out what the testator appears on the whole to have really meant. The testator had the right to designate the group who should share in the distribution of his property, and to add to or take from that group as he saw fit; and even though he may have used the technical words "my heirs at law," which taken by themselves would not include his half sister, if by adding other words he made it clear that his half sister was to be included in the group who were to share in the estate under the will, it is the duty of the court to give effect to that intention. See Cromer v. Pinckney, 3 Barb. Ch. (N. Y.) 466; Pemberton v. Parke, 5 Binney (Pa.) 601, 6 Am. Dec. 432; Lusby, et al. v. Cobb, et al., 80 Miss. 715, 32 So. 6.

Ordinarily, the terms "heirs," "heirs-at-law," "lawful heirs" and "right heirs," are to be understood according to their legal acceptation. But where other words or phrases are added, indicating a different mean-

ing, a different meaning may be inferred. Irvine v. Newlin, 63 Miss. 192; Shook v. McConnell, Ohio Prob., 97 N. E. 2d 111; Jones v. Lewis, 70 Ohio App. 17, 44 N. .E. 2d 735; Simmons v. O'Connor, Tex. Civ. App., 149 S. W. 2d 1107. In the case of Irvine v. Newlin, supra, this Court said: "The proposition deducible from the authorities is that prima facie the word 'heir' is to be taken in its technical sense, unless there is in the will a plain demonstration that the testator used it in a different sense, in which case effect will be given to his intention."

In the case of In Re: Estate of William Henry Austin, 236 Iowa 945, 20 N. W. 2d 445, 162 A. L. R. 709, the Court said: "Under varying circumstances, courts frequently do not apply the technical meaning of the word 'heirs.' It is a flexible term and the meaning to be given it is the question of the testator's intent."

In the case of Lusby, et al. v. Cobb, et al., 80 Miss. 715, 32 So. 6, the Court held that the word "kin," standing alone in a will, means such kin as take under the statutes of descent; but where there are other words in the will disclosing with reasonable certainty, that particular persons were meant to be designated, courts will give the word the meaning the testator attached to it. And, in that case the Court held that where a testator devised his estate to "all my blood kind in Louisiana and Texas," and at the time the will was made and at his death he had two half brothers and one nephew of the whole blood residing in Louisiana and nephews and nieces and grandnephews and grandnieces of the whole blood residing in Texas, the word "kind" should be construed as "kin," and the half brothers were entitled to a per capita share of the estate.

If the testator in this case had said that the property should go to his heirs-at-law according to the laws of descent and distribution of the State of Mississippi, and had said no more, the brother and sister of the half blood would have been excluded, and the appellant's claim

would have had no foundation to rest upon. Section 469, Code of 1942. The testator, however, did not adopt that simple formula, but added other qualifying words and phrases, indicating a different meaning. He said that his property should go to his heirs-at-law according to the laws of descent and distribution, "with the exception of my brother G. E. Gaines." And he then explained, "I have specifically excluded my brother G. E. Gaines from this devise and bequeath," not because he is only a half brother; not because he is not an heir-at-law; "not because of any disfavor or ill will"; but "because he has been well provided for." In our opinion the language used by the testator clearly indicates an intention that no preference should be given to the kindred of the whole blood over the kindred of the half blood; that his half brother and half sister should be included in the group referred to by him in the will as "my heirs at law," and that all of that group except his brother, G. E. Gaines, should share in the distribution of his estate. The testator had.a right to provide that his half sister should be included; and we think that the will shows that he intended that she should be included.

We have reached this conclusion from an examination and study of the will itself. It has not been necessary for us to rest our decision on the testimony of the attorney who prepared the will and attested the same as one of the subscribing witnesses, and who testified on the hearing before the chancellor. It is doubtful whether the testimony of the attorney was competent to show that the testator intended to include the appellant in the group referred to as his heirs-at-law, even though that testimony was admitted without objection. The attorney expressed no direct opinion concerning the testator's intention. But the testimony as a whole confirms the correctness of the conclusion that we have reached from our examination of the will itself. The decree of the chancellor is therefore reversed, and a decree will be entered

here in favor of the appellant, and the cause will be remanded for further proceedings in accordance with the views herein expressed.

Reversed and remanded.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.