185 So.2d 443 (1966)
Mrs. Ruby Holleman MONROE, Executrix, et al.
v.
LeRoy Elliott HOLLEMAN, Co-Executor, et al.
No. 43911.
Supreme Court of Mississippi.
April 18, 1966.
*444 Edward J. Currie, Sr., Edward J. Currie, Jr., Hattiesburg, E.J. Wohlt, Jr., Houston, Tex., for appellant.
John M. Dunnam, Jr., New Augusta, Travis & Travis, Hattiesburg, for appellee.
RODGERS, Justice.
This is an appeal from the Chancery Court of Forrest County, Mississippi, in the matter of the estate of Maggie Lou Holleman, Deceased, and involves the construction of the joint will and testament of Maggie Lou Holleman and her husband, George A. Holleman, Deceased. The question involves the determination of whether or not she, as survivor, had the right under the terms of the will to use the monies of their joint estate to establish certain joint savings accounts and to purchase certain joint savings bonds in the names of her brother and sisters. The testimony in this case reveals that on August 15, 1950, George A. Holleman, (sometimes referred to in the record as George Anders Holleman), and his wife, Maggie Lou Holleman, (sometimes referred to as Mrs. George A. Holleman and Mrs. Maggie Lou Holleman), made and published their joint last will and testament, at which time they were residents of the City of Chicago, Cook County, Illinois. The will was made and published when both Mr. and Mrs. Holleman had retired from active service.
George A. and Maggie Lou Holleman moved from Chicago, Illinois, to Columbus, Mississippi, in the year 1952. Prior to his retirement, George Holleman, among other things, was a professional singer and a composer of music. Maggie Lou Holleman was a civil service employee. On June 21, 1955, George A. Holleman departed this life at the age of fifty-two at his home in Columbus, Mississippi.
After the death of George A. Holleman, Mrs. Holleman filed her petition on July 11, 1955, in the Chancery Court of Lowndes County, Mississippi, to probate the joint will and testament of the parties. Mrs. *445 Holleman did not attempt to renounce the joint will as the widow of the testator, George A. Holleman. A decree was entered by the chancery court on July 27, 1955, admitting the will to probate in common form, and letters testamentary were duly issued to Maggie Lou Holleman. Thereafter, on February 6, 1956, the executrix filed her first and final account, and by decree made and entered February 8, 1956, the first and final account was approved and the estate finally closed, and Mrs. Holleman was permitted to take possession of the estate, under the terms of the will.
Following the death of her husband, Maggie Lou Holleman moved to Hattiesburg, Mississippi, where she died on January 12, 1963. On March 15, 1963, some two months following her death, LeRoy Elliott Holleman, (sometimes referred to in the record as L.E. Holleman), and Mrs. Ruby Holleman Monroe filed their joint petition in the Chancery Court of Forrest County, Mississippi, for the probate of the joint last will and testament and for letters testamentary, naming themselves as co-executors of her estate. The will was admitted to probate on March 15, 1963 for a second time, and the clerk was ordered to issue letters testamentary to LeRoy Elliott Holleman and Mrs. Ruby Holleman Monroe as co-executors of the said estate. Letters testamentary were duly issued on March 30, 1963. Thereafter, on April 11, 1964, LeRoy Elliott Holleman and Mrs. Ruby Holleman Monroe filed their joint petition to said court for approval of their first annual and final account as co-executors of the estate of Maggie Lou Holleman, Deceased.
After the petition for approval of the final account had been filed, Mrs. Ruby Holleman Monroe discovered that during the lifetime of the testatrix, she established certain joint savings accounts, naming herself and other contingent beneficiaries under said joint last will and testament as joint tenants, with the right of survivorship. It was also discovered that at the time of the death of said testatrix, there was on deposit in such joint accounts substantial amounts of money which were alleged to be a part of the assets of the estate and which should have been accounted for in said final account. The co-executor, Mrs. Ruby Holleman Monroe, thereupon filed her petition for authority to withdraw her application for approval of the first annual and final account. She alleged that the joint accounts were made in an attempt on the part of the decedent and her joint tenants to circumvent the provisions of the joint will and thereby deprive the petitioners of assets to which they were entitled under the terms of the will.
Following a hearing on the merits of the final account, the petition of executors, and the petition for withdrawal filed by Mrs. Ruby Holleman Monroe, the chancery court made and entered its final decree on January 22, 1965, approving said final account, and discharging said co-executors. The court dismissed, with prejudice, the petition of the executors, and dismissed the petition of Mrs. Ruby Holleman Monroe for withdrawal of her approval of the final account, and adjudicated the interests of the parties to the assets of the estate under the will.
The record shows that during the lifetime of Maggie Lou Holleman, she and her sister, Mrs. Ruth Holleman Calhoun, went to the Hattiesburg Savings & Loan Association on July 13, 1961, and withdrew from two savings accounts the sum of $20,000. Thereupon, at the request of Maggie Lou Holleman, the Association opened five joint savings accounts as follows: Account No. 7715 in the name of Mrs. Maggie Lou Holleman and Mamie Holleman Lewis, or to either of them, or to the survivor, in the amount of $4,000; Account No. 7716 in the name of Mrs. Maggie Lou Holleman and LeRoy E. Holleman, or to either of them, or to the survivor, in the amount of $4,000; Account No. 7717 in the name of Mrs. Maggie Lou Holleman and Willie Holleman Woodall, *446 or either of them, or to the survivor, in the amount of $4,000; Account No. 7718 in the name of Mrs. Maggie Lou Holleman and Alberta Holleman Coopwood, or to either of them, or to the survivor, in the sum of $4,000; and Account No. 7719 in the name of Mrs. Maggie Lou Holleman and Ruth Holleman Calhoun, or to either of them, or to the survivor, in the sum of $4,000.
The Hattiesburg Savings & Loan Association prepared signature cards for all of the joint tenants, and Maggie Lou Holleman signed all of them and took them with her and obtained the signatures of the joint tenants, and mailed them to the Association. Each card contained the following pertinent language:
"(A)s joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for membership and a savings account in the Hattiesburg Savings & Loan Association and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants' signatures, shown below; it is agreed that any one or more such person(s) so authorized shall have power to act in all matters related to this account, including, but not without limiting the generality of the foregoing, withdrawal in whole or in part of this account * * *"
On December 29, 1956, Mrs. Holleman opened a joint account in the First National Bank of Hattiesburg in the name of Mrs. George A. Holleman, L.E. Holleman and Mrs. J.B. Calhoun, or either of them, or their survivors, in the amount of $10,000. This amount was transferred to the joint savings account from the checking account of Maggie Lou Holleman in said bank.
On July 13, 1961, Mrs. Maggie Lou Holleman established the following five joint savings accounts in the First Federal Savings & Loan Association of Hattiesburg, Mississippi; Account No. 17023 in the name of Mrs. Maggie Lou Holleman and Mamie Holleman Lewis in the sum of $4,000; Account No. 17024 in the name of Mrs. Maggie Lou Holleman and LeRoy E. Holleman in the sum of $4,000; Account No. 17025 in the name of Mrs. Maggie Lou Holleman and Willie Holleman Woodall in the sum of $4,000; Account No. 17026 in the name of Mrs. Maggie Lou Holleman and Alberta Holleman Coopwood in the sum of $4,000; and Account No. 17027 in the name of Mrs. Maggie Lou Holleman and Ruth Holleman Calhoun in the sum of $4,000. The signature cards for these accounts contained the same language as those of the Hattiesburg Savings & Loan Association, except for the name of the First Federal Savings & Loan Association.
The record shows that all of the withdrawals on any account, either by interest, dividends, or otherwise, were made by Mrs. Maggie Lou Holleman, and that no one other than Mrs. Maggie Lou Holleman withdrew any sum at any time from any of these accounts until after her death.
The Chancery Court of Forrest County, Mississippi, determined that the passbooks  in connection with the joint savings accounts here involved showing funds on deposit with the Hattiesburg Savings & Loan Association, the First Federal Savings & Loan Association of Hattiesburg, and the First National Bank of Hattiesburg  were kept in a safe deposit box in the First National Bank of Hattiesburg in the name of Mrs. Maggie Lou Holleman. Maggie Lou Holleman and her sister, Ruth Holleman Calhoun, had access to the box, and both had actually entered the box, according to the records of the bank. After the death of Maggie Lou Holleman, LeRoy Elliott Holleman entered the deposit box and found all of the passbooks of the joint accounts in an envelope, on which was written "This belongs to Mrs. J.B. Calhoun." He removed the passbooks from the envelope and distributed the same as follows: He placed the passbook in which he was named as joint tenant in the safe deposit box in his bank; he personally delivered to *447 Mrs. Alberta Holleman Coopwood, Mrs. Willie Holleman Woodall and Mrs. Ruth Holleman Calhoun, the passbooks in which they were named as joint tenants; and he mailed to Mrs. Mamie Holleman Lewis the passbook in which she was named a joint tenant.
Thus the record reveals that the testatrix had established joint or survivor savings accounts in the Hattiesburg Savings & Loan Association in the sum of $20,000; in the First Federal Savings & Loan Association in the sum of $20,000; in the First National Bank of Hattiesburg in the sum of $10,000; and had purchased U.S. Savings Bonds under joint ownership in the approximate sum of $6,120.52. The total of this sum of money here involved came from the joint estate of George A. Holleman and wife, Maggie Lou Holleman.
The question to be determined here involves an interpretation of the terms of the joint will probated in Lowndes County by the surviving testatrix. In order to understand the crux of this dispute, it is necessary to set out the pertinent parts of the joint will. The provisions of the will containing Items II, III and VII are as follows:
"Item II
"It is our will and desire that the survivor of us, George Anders Holleman or Maggie Lou Holleman, as the case may be, shall have and receive in fee simple all of the estate of every description, and wherever situated, real, personal or mixed, which either, or both of us, may own, to be used, occupied, enjoyed, managed, conveyed, encumbered, expended and disposed of, and during the lifetime of such survivor, and that upon the death of such survivor, any of such estate, of either or both of us, then remaining in the hands of such survivor, as the case may be, shall pass to and be divided among the persons named and in the manner and proportions provided in Item III hereinafter.
"Item III
"Upon the death of the survivor of us, George Anders Holleman or Maggie Lou Holleman, as the case may be, such of the estate of us, or either of us, then remaining, and owned and possessed by such survivor, shall pass to in fee simple and be divided among the following persons in the respective shares hereinafter set forth as follows:
"A. An undivided one-half of such estate to the following and to be divided equally among them: (Then follows the names of the mother and sisters of Maggie Lou Holleman.)
* * * * * *
"Item VII
"It is understood that we hereby mutually agree and contract for the disposition of the estate of us, either of us, it being our expressed intention that the survivor of us shall receive all of our estate without limitations upon his or her use, enjoy, or dispose of the same; however, it further being our expressed intention that whatever of the estate remains after the death of both of us shall pass to our respective families, one-half to each family, as hereinabove provided under Item III * * *"
It is the earnest contention of the brother and sisters of Maggie Lou Holleman that under the terms of the joint will, she had the right, prior to her death, to dispose of all of her assets, including the assets devised and bequeathed to her by her husband, George A. Holleman; and that at her death, no part of the proceeds of the joint tenancy savings accounts and the joint tenancy bonds became assets of her estate, regardless as to what extent she may have contributed monies in establishing such accounts and in purchasing such bonds. In support of their argument, the appellees point out that an absolute devise may not be reduced or diminished to a life estate by any succeeding language which is inferior *448 in clarity and certainty to the devising clause. Appellees cite In re Vail's Will, 228 Miss. 151, 87 So.2d 68 (1956); Frierson v. Moorhead, 211 Miss. 811, 51 So.2d 925, 52 So.2d 833 (1951); 33 Am. Jur. Life Estates, Remainders, Etc. § 15 (1941). We are of the opinion that these cases are not applicable in the case now before the Court, because, from a careful study of this will and the authorities, we have reached the conclusion that the instrument here involved is more than a will, it is also a contract. We are of the opinion that Item VII of the will here in issue is intended to be a contract between the testators for the disposition of their joint estate in a mutual will.
The textwriters define a mutual will as a will which is executed in pursuance of a compact or agreement between two or more persons to dispose of their property, either to each other, or to third persons in a particular manner. It is said in 97 C.J.S. Wills § 1364e, at page 286 (1957);
"The term `mutual will' has frequently been used by the courts interchangeably with `reciprocal will,' and with the same meaning, and, occasionally, as meaning a joint will; the terms `joint wills' and `mutual wills' are sometimes inaptly used interchangeably."
This same authority, supra, points out under f of § 1364 at page 288:
"`Reciprocal wills' are those in which each of two or more testators makes a testamentary disposition in favor of the other or others, under a similar plan, either by executing separate wills or by all uniting in the same will, a will of the latter sort, or one both joint and reciprocal, being sometimes termed a `double' will * * *."
This Court has recognized for many years that a person may contract to leave his property at his death by will. Anding v. Davis, 38 Miss. 574 (1860). Such contracts are not repugnant to public policy. Price v. Craig, 164 Miss. 42, 143 So. 694 (1932). Moreover, the will of two or more persons executed pursuant to an oral agreement or understanding, may, within itself, when considered and construed together, constitute a contract. 97 C.J.S. Wills § 1367c (1957); Annot., 69 A.L.R. 206 (1930); Annot., 3 A.L.R. 172 (1919).
The construction of joint and mutual wills and the contract under which they are made is governed by the rules relating to the construction of wills and contracts generally, including the rule that the situation of the parties and the surrounding circumstances are to be taken into consideration so as to determine the intent of the testators. See Slaughter v. Gaines, 220 Miss. 755, 71 So.2d 760, 49 A.L.R.2d 1355 (1954).
Construing the will here involved in the light of the contract which is a part of the will, we are convinced that the surviving testator could not legally give away a great part of the corpus of the estate and thereby defeat the agreement therein contained "that whatever of the estate remains after the death of both of us shall pass to our respective families, one-half to each family * * *"
We are of the opinion that the testimony in this case shows clearly that Maggie Lou Holleman attempted to disregard her agreement by placing a great part of the estate in joint accounts and joint bonds in an effort to transfer the residue of the estate to her own family in preference to an equal division of the residue between their "respective families." Moreover, the persons preferred are persons the testators agreed in their contract in the will should only receive a one-half interest in the residue of the estate
In the case of Robertson v. Robertson, 94 Miss. 645, 47 So. 675, 136 Am.St.Rep. 589 (1908), we said:
"[I]f the instrument should be held to be a mutual or even a joint will, it is clear that the surviving testator cannot revoke the will as to the estate belonging *449 to the deceased, which became vested at the death of the testator." 94 Miss. at 652, 47 So. at 676.
In Asher v. Hart, 212 Miss. 749, 55 So.2d 447 (1951) we pointed out that "Both appellant and appellees agree that a mutual will can not be revoked unilaterally, where a survivor has accepted benefits under it." 212 Miss. at 758, 55 So.2d at 450.
In the case of Johnston v. Tomme, 199 Miss. 337, 24 So.2d 730 (1946), this Court had under consideration an oral contract of a testator to make a will to a devisee in return for care, and after the will had been made, and the services rendered, the testator attempted to change the will by codicil and a second will. The question there was: "Is a will, executed in compliance with an oral agreement to execute it, irrevocable by the testator who had received the services and care agreed upon as a consideration therefor?" 199 Miss. at 345, 24 So.2d at 731. This Court said:
"We do not lay down a general rule allowing the establishment of a trust by oral agreement, nor do we design a model for all cases. We do say that where a testator executes a will in compliance with an oral agreement with the devisee that the latter will render unique and necessary personal services to him involving a substantial change in the status and manner of living of the promisee, and such services have been performed, so that a revocation of the will amounts to fraud upon the latter, rendering it impossible or impracticable to restore him to the situation in which he was prior to the contract, equity will hold such will to be irrevocable and the rights thereunder may be established." 199 Miss. at 351-352, 24 So.2d at 734.
Although the facts in Johnston v. Tomme, supra, are not the same as in the instant case, nevertheless the principle is similar.
We do not deem it necessary to pass upon the question of whether or not a wife may renounce the mutual and joint will under the authority of Mississippi Code Annotated section 668 (1956), because it is not necessary in the instant case, since the surviving spouse probated the mutual will here involved and took the benefits therein contained, and was thus estopped to repudiate the contract to leave the residue of their joint estate to be divided equally between their respective families. See cases cited in 57 Am.Jur. Wills § 741 at p. 508 (1948).
After having carefully considered the evidence in this case and the terms of the will here involved, we are convinced that the instrument is a mutual and reciprocal will and is contractual in nature. We hold, therefore, that Maggie Lou Holleman was estopped to repudiate the agreement contained in the will, and that she could not defeat the clear intention of the will by giving a large part of the estate to her family in preference to that of her husband's family.
The decree of the chancery court will be reversed so that the trial court may divide the estate equally, according to the terms of the will, between the families of George A. Holleman and Maggie Lou Holleman, and may recover the joint account and joint bond purchases, distributed by Maggie Lou Holleman to members of her family.
The case therefore is reversed and remanded for further proceedings in the chancery court, not inconsistent with the foregoing opinion.
Reversed and remanded.
GILLESPIE, P.J., and JONES, INZER and SMITH, JJ., concur.