WILLIAMS v. WILLIAMS et al.

(Division A. March 20, 1939.)

[187 So. 209. No. 33586.]

Hathorn & Williams, of Poplarville, for appellant.

Hall & Hall, of Columbia, G. B. Keaton, of Picayune, and H. H. Parker, of Poplarville, for appellee.

Argued orally by **F. C. Hathorn**, for appellant, and by **H. H. Parker** and **Lee D. Hall**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

On the 9th day of September, 1937, G. H. Williams filed his bill in the chancery court of Pearl River county against Mrs. Trinity Williams, administratrix of the estate of R. J. Williams, deceased, and against her individually, and Mrs. Nell Koch, formerly Mrs. Nell Curtis, in which he sought to recover against the estate the sum of $18,000 alleged to be due him for services rendered the estate; and also sought, in event he did not recover from the administratrix, to recover $6,000 each from Mrs. Trinity Williams, individually, and Mrs. Nell Curtis Koch. As to Mrs. Trinity Williams, administra-

trix, the court below sustained her demurrer to the bill.
As to Mrs. Trinity Williams, individually, the court
overruled her demurrer.

Mrs. Nell Koch entered her appearance in the chancery
court and a decree pro confesso was rendered against her.
G. H. Williams prosecutes a direct appeal to this court
from a decree sustaining a demurrer to the bill filed by
the administratrix and Mrs. Trinity Williams individ-
ually, filing a direct appeal to this court from the decree
overruling her demurrer to the bill against her.

We consider here only the substantial facts of the
amended bill and the demurrer of the administratrix
thereto, as we are of opinion that the settlement of the
appeal of G. H. Williams will practically dispose of the
case.

R. J. Williams died February 27, 1930. On March 29,
1930, Mrs. Trinity Williams, G. H. Williams and Mrs.
Nell Curtis (now Mrs. Koch) entered into a written
agreement whereby certain features of the administra-
tion of the estate were disposed of. This written agree-
ment, together with a decree or order of the chancery
court of that county, in the administration matter on
September 19, 1930, is the basis of this suit. In part, the
bases of this agreement are here set out:

"Whereas, R. J. Williams, late of Pearl River County,
Mississippi, departed this life on the 27th day of Feb-
ruary, 1930, leaving a widow, the undersigned Mrs. Trin-
ity Williams, and two children the undersigned G. H.
Williams and Mrs. Nell Curtis, and

"Whereas, there has been produced what purports
to be a last Will and Testament of said R. J. Williams,
which said last Will and Testament the said Mrs. Trinity
Williams has offered for probate in the Chancery Court
of Pearl River County, Mississippi, and

"Whereas, the said Mrs. Trinity Williams has also
heretofore filed her written renunciation of said Will
with the Chancery Clerk of Pearl River County, Missis-
sippi, and

"Whereas, said G. H. Williams and Mrs. Nell Curtis have already filed with said Chancery Clerk their objections to the probate of said Will, and expect to contest the probate of same, and

"Whereas, it is necessary for the proper protection of said estate and the efficient and economical handling thereof, that this agreement be entered into,

"Now therefore, it is agreed by and between the said parties, as follows, to-wit:"

On account of its length, we will now set forth the salient facts of said agreement:

(1) That letters of administration on that estate shall be issued in favor of Mrs. Trinity Williams, and the administration of said estate proceeded with, pending the contest of said will. It was then agreed as follows:

(2) The "administration" shall employ G. H. Williams as long as his services may be needed to assist in the handling of said estate, and particularly to look after the debts due said estate and to selling said property, and he shall be paid out of the funds of the estate a salary of $200 per month out of which he shall pay his own traveling expenses. It is agreed and understood that this compensation is solely for the personal services and traveling expenses of said G. H. Williams, and if any help in addition to his personal services may be needed, either for the preservation or management of said estate, same may be paid for out of the funds of the said estate without any deduction from the salary to be paid to him.

(3) That the funds collected should be deposited to the credit of the administratrix in a bank in Picayune, and disbursement should be by check on that fund.

(4) They agreed that Mrs. Trinity Williams might be allowed one year's support as widow, she agreeing not to accept more than $3000.

(5) That the administratrix might employ solicitors for a fee of $500, to be paid by the estate, limited to services in the course of administration and not providing for extraordinary services.

(6) That the court would allow reasonable commissions to the administratrix.

(7) It is a very lengthy provision providing for the method of dividing the property in the event the will is held invalid after the winding up of the estate, which, in substance, provided that three arbitrators or commissioners would be selected, and provided for a disinterested party to select commissioners in the case of disagreement; and they agreed that when a division of the property was made that they would execute deeds, contracts or such conveyances as are necessary to effectively put the title in the respective parties to the lots of land or property designated and allotted by these arbitrators in the manner therein set forth.

On April 5, 1930, Mrs. Trinity Williams was appointed temporary administratrix of the estate. In June, the administratrix filed a petition for permission to pay G. H. Williams the salary stipulated for in the contract to July 1, 1930, and this petition was joined in by G. H. Williams and Mrs. Nell Curtis. The chancellor ordered that G. H. Williams be paid $200 per month for three months.

On September 18, 1930, it appears and is fairly inferable from all of the allegations of the bill that the will contest had been disposed of prior to that time by a verdict and decree in favor of the contestants, and that the will had been rejected and not admitted to probate.

In the first petition, the administratrix, together with G. H. Williams and Mrs. Nell Curtis, filed a petition in the chancery court in which it was alleged that the estate consisted almost entirely of notes and other form of indebtedness, cutover lands, some timber, and the interest of the decedent in two corporations, one in Hancock County and the other in Pearl River County that it was necessary for the benefit of the heirs to the estate to employ a person to assist the administratrix in looking after the property and collecting the debts and preserving the estate; that they had entered into a written agreement

signed by all of the heirs at law providing that the administratrix should employ G. H. Williams for said purposes for $200 per month, and that he had been acting in that capacity and was entitled to pay. On September 19, 1930, the petition reiterated in substance the employment of Williams, prayed that she, the administratrix, be allowed to pay him for two months' services and prayed for an order to allow her to continue the payment of that sum per month in accordance with the agreement as long as his services were necessary, or until this order should be revoked by the chancery court. On September 19th, the court decreed in accordance with the prayer of the petition.

The bill alleged that at the time the written agreement was entered into there were many debts against the estate and encumbrances on the property; that the corporations were owned by the decedent; that there were many debts due the estate that it required a man who was familiar with the corporations and the estate to effectively collect the debts and handle the property of the estate; that he had devoted his time for ninety months and rendered the services contemplated by the contract; and that by virtue of his efforts and services that it was an estate which was threatened with insolvency at the inception of the administration, he had collected more than $200,000; that all debts had been paid and all expenses of administration to that date; there remained in the hands of the administratrix cash in excess of $18,000; and that there was about $300,000 worth of lands and property to be divided among the three heirs at law.

He alleged facts and circumstances which tended to show that there were many complications, and much of service and time was necessary in order to a successful handling of this large estate; that this was accomplished largely by reason of the fact that he was intimate with the business operations of his father; and that he had performed the written contract in accordance with the order of the chancery court of September 19, 1930.

He alleged that he had not, until the year in which this suit was brought, requested the administratrix to make further payments to him because it was necessary to apply the monies collected to the payment of probated claims and other charges against the estate. He had resisted the payment of a large claim propounded by the administratrix against the estate; had successfully resisted another large claim propounded by her against one of the corporations of which he was an officer; that he had resisted her petition filed in 1934 to sell all of the property of the estate at that time in order to pay debts and her large probated claim against the estate; and that he, as an heir at law, successfully resisted this petition and prevented the sacrifice of the property at that time, which he alleged would have endangered the interest of creditors and of the heirs at law. He alleged that the administratrix had been paid her allowance, and had been paid commissions of $3000, and the balance of the estate, including the corporations, were free of all encumbrances; that there were no creditors interested; and that the only parties interested in the controversy at the time of the filing of the bill were the three heirs at law.

As to the will contest, the purported will is not made an exhibit to the amended bill, but it is alleged therein that G. H. Williams, his sister, Mrs. Nell Curtis Koch, and Mrs. Trinity Williams, petitioning as sole heirs at law, had, by procuring the order of September 19th, fully ratified the contract herein involved and that the court had, in advance of the services sued for herein, approved the continuance of the contract as long as it was necessary or until further order of the court, and that letters of administration and other proceedings had been had and done pursuant to this contract, that the contract was a family settlement, and that the contract, together with the order of the court, bound the estate to pay him for his services. He alleged that, due to his knowledge and diligence, an estate of the value of $300,000, had been saved to these heirs at law.

G. H. Williams assigns as error the action of the court in sustaining the demurrer of the administratrix to his amended bill.

In substance, the grounds of demurrer were: (1) that the contract was illegal and not enforceable; (2) that the contract was and is against the public policy of the State; (3) that the contract was unauthorized, was one the administratrix could not make, either in law or by order of the court, and was therefore void and could not be ratified; (4) the contract, records and orders sued upon show that G. H. Williams seeks inequitably to place a heavy charge upon the estate without any previous order of the court for services not then rendered which is against the public policy of this State. It is the main insistence of the appellee, the administratrix, that the contract was not a family settlement, was illegal and against the public policy of this State.

Of course, if the contract was illegal or against the public policy of this State, it cannot be enforced in our courts, but in the case of Parker v. Broadus, 128 Miss. 699, 91 So. 394, this court has set at rest the legality of family settlements. However, the three parties making this settlement, and the administratrix, made known to the court the necessity for the employment of G. H. Williams to proceed to collect the debts, many in number, as alleged in the bill, and large in aggregate amount, and the court found by its decree that this part of the agreement was proper and necessary to the administration of the estate. It is certain that no other persons were interested except the present owners of the property left by the decedent. G. H. Williams did not act entirely pursuant to the contract, but the administratrix was directed by the chancellor to pay him the salary as long as it was necessary, or until further orders of the court. When the contract terminated or ought to have been terminated will be, we imagine, on the trial of the case, an important issue to be settled. Of course if his services became no longer necessary to the estate, the pay-

ments should have then ceased; or if the court had adjudged that no further payments be made at any time subsequent to the order of September 19th, then of course the payments would cease. Both parties rely with confidence upon the case of Clopton v. Gholson, 53 Miss. 466, and authorities there cited, but in that case wherein the private employment by the executors of attorneys for the collection of debts or notes due the estate was involved, the court held that it was an entirely proper arrangement made by the executors with the attorneys but that the executors as such were not subject to suit and could not bind the estate by the private agreement. Certain exceptions to this rule are stated there which do not arise in the case at bar. The last case to which our attention has been called is Reedy v. Allen, 181 Miss. 471, 179 So. 569. We have no such case here. When the facts confronting the administratrix and the heirs at law, who were the most interested parties in this estate, were presented to the court, then the court authorized in advance at that time the administratrix to incur the obligation against the estate as a part of the expenses to be incurred by her in the administration of the estate. All of the cases cited have no application here for the reason that it is evident on the case made by the bill that it was necessary to the preservation of this estate, where there were more than $200,000 due the estate, that someone be employed for that purpose, and the court had a right to authorize the extraordinary expense so long as it was reasonable and necessary, and no expense is here alleged to have been incurred that was not within the purview of that order. The chancellor had a right, in view of the size of the estate, the quantity and value of the land, the amount of the debts due the estate, and the amount owing by the estate, to make such reasonable orders for incurring expenses as were warranted by the facts. No one can say that this expense was unwarranted. In fact, these parties here in interest litigating this matter are certainly estopped by the action

in making the written agreement and having it approved in advance by the court as soon as they were in position to assert that they were sole heirs at law and the owners of the estate, subject to the payment of debts. No creditor is here complaining. The administratrix was not willing to hazard her own interest by the private agreement which she had made with G. H. Williams, but promptly presented the facts to the court and procured an order in advance to incur the expense and such charges made thereunder as were reasonable and within the purview of the contract, and the order of the court must be allowed to the administratrix. She now repudiates the contract and denies liability so that if the agreement to pay this salary from the funds of the estate is void, the other heirs are in the attitude of repudiating the contract after having, so far as this demurrer is concerned, received the valuable services in their interest and primarily for the benefit of the estate. The facts well pleaded are admitted by the demurrer, and there is no lack of allegation in the bill of the necessity and of the benefit accruing to this estate. If the court had not authorized this expense to be incurred in advance, then under all the authorities in this State the liability, if any, would be that of the individual and not of the executor-administrator. We are not here dealing with a case where the will provides for the payment of necessary expenses in administration. Having procured an order in advance, the administratrix was released from personal liability for incurring the particular expense here involved. There is no sound reason here advanced why the court could not authorize the administratrix to incur this expense, and why especially, no creditors being involved, all the parties who now own this estate should not be bound by their contract and that it should be paid from the funds of the estate. This kind of service is frequently necessary and must be incurred, especially in all those estates where there is a large aggregate amount of indebtedness due the estate from many in-

dividuals. See 24 C. J. 310, Par. 931; In re Stewart's Estate, 145 Or. 460, 28 P. (2d) 642, and in the very full notes in 91 A. L. R. 818.

It is further argued that there was and is no consideration for the family agreement herein. In the first place, it is obvious that when the widow agreed to renounce the will and not take thereunder practically all of this estate, the proponent of the will was no longer a serious contender in the litigation. She was doubtless familiar with the facts of the will contest and thus compromised serious and vexatious litigation with the two children of her husband. This saved to the parties to the contract much vexatious and expensive litigation. In the next place, the right to administer the estate was a valuable one. She was assured of that right by the family agreement, with the commissions which might be allowed to her by order of the court. The agreement to employ Williams obviated a contest of her right under the statute to administer this estate as widow. As to this right to administer the estate as between his widow and these children, the facts alleged in the bill and the statements of fact in the agreement as to the competency of the widow might have produced serious, vexatious and expensive litigation. The effect of this agreement was, so far as these parties are concerned, to set aside the directions of the will as to the distribution of this estate, and those interested, so far as they could, and agreed upon a distribution contrary to the terms of the will. This agreement, carried into effect, obviated expensive court proceedings, large attorneys fees, and long delay if litigation ensued. This agreement is not against the public policy of the State nor void, but its very terms indicate a submission of all of it, except the partition of the property, to the chancery court having jurisdiction for its approval. The renunciation of the will by the widow was a tacit admission that she thought on the facts the will could not be admitted to probate. See 78 C. J. 909-15; 69 C. J. 1276; In re Noble's Estate, 141 Kan.

432, 41 P. (2d) 1021, 97 A. L. R. 463; and the notes to that case; also Parker v. Broadus, 128 Miss. 699, 91 So. 394. The mutual promises of the parties here constitute sufficient consideration, and we stress the fact that these family agreements made after the death of the decedent from whom the estate is derived are favored by our court. In addition to what we have already said, if the heirs at law, after a will had been rejected, all being adults, had appeared in court, as they did in this case, and procured an order which was entered by the court in this case in so far as their interest in the estate is concerned, they were bound thereby if there had been no family agreement, the court having adjudicated the employment of Williams as reasonable and necessary. This petition was not only a ratification of the family settlement but created an estoppel as to their interest in the estate, and there is no sound reason why they should not be bound by the agreement entered into in court for incurring this expense there being no creditors involved in this litigation; and the court not having, so far as this record discloses, been requested to vacate, rescind or terminate it.

Nothing appears in this agreement to pay Williams his salary for this service to render it illegal or contrary to the public policy of this State. By making the agreement and having the court approve as to the employment of Williams, these parties, presumably with better knowledge of the situation than any other persons, fixing the amount of his compensation and stipulating that it should be paid by the estate, bound themselves thereby.

We come to a consideration of the appeal of Mrs. Trinity Williams, individually, from a decree overruling her demurrer to the bill. We have already concluded that the estate is liable to Williams on the written contract, and the decree authorizing the administratrix to employ Williams, and the terms of the employment. In this case, where the only parties in interest, the sole heirs at law, procured the court order for the payment of Williams' salary by the estate, released them from individ-

ual liability. Before September 19, 1930, there was individual liability, but in so far as these parties, the sole heirs of this estate, are concerned, their liability has been at their instance assumed by their estate. There are no creditors or outside parties to complain. Therefore, no reason why the decree of the court, if anything is adjudged to be due Williams, cannot be enforced against the estate. These heirs cannot complain, and there are no other persons shown to be interested. The debt here sued for was authorized to be assumed as legally a part of the expenses of the management of this large estate, now appearing to be worth in the aggregate more than a half million dollars. There is absolutely no necessity for a decree against the estate so very amply solvent, and also a decree against the individuals who entered into the original written family agreement. The prayer of the bill was alternative, as we view it. Whatever amount may be found to be due Williams, if anything, the estate is amply able to pay. After all, whatever decree may be entered against the estate will be in fact paid by the three sole heirs at law of the estate. All debts and charges against the estate having been paid, they own it.

We desire to emphasize that there is no good reason why the heirs at law may not enter into an agreement whereby the expenses to be incurred in the administration of the estate may not be settled by them in a manner conceivably in their interest; and when the court makes such an order as was made here, the individual liability of the administratrix is relieved; and where the estate is solvent and all parties in interest are before the court, there is no reason why such expenses should not be ordered to be paid from and by the estate. By the order, the administratrix relieved herself from personal liability, and G. H. Williams assented thereto by his petition in court. This agreement was not entered into in a corner, but on two occasions, the sole heirs at law

and the parties most interested, presented its terms in effect to the chancery court.

The demurrer of Mrs. Trinity Williams, administratrix of the estate, should have been overruled by the court; the demurrer interposed by her individually should have been sustained, and we now so order.

Reversed and remanded.