CITY NATIONAL BANK AND TRUST COMPANY OF COLUMBUS, Administrator With Will Annexed of the Estate of Bess M. Kelly, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5456.

United States District Court
S. D. Ohio, E. D.

March 7, 1962.

Porter, Stanley, Treffinger & Platt, Connor, Connor & Bennett, Columbus, Ohio, for City Nat. Bank & Trust Co. of Columbus and others.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Joseph P. Kinneary, U. S. Atty., Columbus, Ohio, Leonard M. Goldberg, Atty., Dept. of Justice, Washington, D. C., for defendant United States.

WEINMAN, Chief Judge.

This matter is before the Court upon the agreement of the parties that the within action be submitted on the stipulation agreed to by the parties and upon their respective briefs. The parties have stipulated that for the purposes of this case the following facts are true, and the Court adopts said stipulation, filed June 16, 1961, as its Findings of Fact.

*FINDINGS OF FACT*

1. Plaintiff, a corporation incorporated under the laws of the State of Ohio with principal office at 20 East Broad Street, Columbus, Ohio, is the duly qualified and acting Adminstrator With Will Annexed of the Estate of Bess M. Kelly, deceased, under Letters of Authority issued by the Probate Court of Franklin

County, Ohio. Defendant is the United States of America.

2. This action is brought pursuant to Section 1346(a) (1) of Title 28 of the United States Code, and arises under the Internal Revenue laws of the United States. The Court has jurisdiction over the subject matter of this action.

3. This action is for the recovery of federal estate taxes paid by the Estate of Bess M. Kelly, deceased, in the amount of $241,342.01, plus interest thereon at the rate of six per cent (6%) per annum from the dates of payment of the items comprising said total amount.

4. Bess M. Kelly died testate, a resident of Franklin County, Ohio, on November 24, 1952. The Last Will and Testament of Bess M. Kelly was filed for probate and record in the Probate Court of Franklin County, Ohio, on December 10, 1952. The said Last Will and Testament was admitted to probate and letters testamentary issued to Fred R. Hearn as Executor (hereinafter referred to as the "Executor") of the Estate of Bess M. Kelly, deceased, (hereinafter referred to as the "Estate"). The Executor died during the course of the administration of the Estate and thereafter, on October 16, 1957, plaintiff herein was duly appointed and qualified as Administrator With Will Annexed. No contest of said Last Will and Testament or any other proceeding attacking its validity has ever been filed.

5. Bess M. Kelly, by Item XI of her Last Will and Testament, bequeathed her residuary estate in trust, the net income of which to be accumulated until her adopted son, Dennis R. Kelly (hereinafter referred to as "Dennis"), reached the age of 21 years. Thereafter, until Dennis reached the age of 45 years, he was to receive the amount of $5000.00 per year, and such additional sums as the Trustee deemed necessary for his support and maintenance in accordance with his station in life. The said trust was to terminate when Dennis reached the age of 45 years. Upon termination of said trust the principal thereof was to be paid to Dennis if living, and if not living, to his wife and children, if any.

6. Item XII of the Last Will and Testament of Bess M. Kelly provided that if Dennis should die before reaching the age of 45 years, leaving neither wife nor child or children surviving him, then the aforesaid trust should cease and determine and all of the property then comprising the trust estate should be paid one share each to the following:

a. Sisters of the Poor of St. Francis or whatever order, corporation, association or partnership may then be in charge of the operation and management of St. Anthony's Hospital, Columbus, Ohio.

b. Sisters of the Poor of St. Francis, or whatever order, corporation, association or partnership may then be in charge of the operation and management of St. Francis Hospital, Columbus, Ohio.

c. Sisters of the Good Shepherd, or whatever order, corporation, association or partnership may then be in charge of the operation and management of the Convent of the Good Shepherd, Columbus, Ohio.

d. Dominican Sisters of the Sick Poor, Columbus, Ohio.

e. Hawkes Hospital of Mt. Carmel, Columbus, Ohio, or whatever order, corporation, association or partnership may then be in charge of the operation and management of said hospital.

f. Cradle Society of Evanston, Illinois.

7. At all times material hereto, each of the organizations mentioned above in Finding of Fact number 6 was organized and operated exclusively for the religious, charitable, or. educational purposes described in Section 812(d) of the Internal Revenue Code of 1939, 26 U.S.C. § 812(d).

8. Dennis died intestate on February 12, 1953, 80 days after the date of death of Bess M. Kelly. On the date of his death Dennis was 20 years of age, un-

married; leaving neither wife nor child surviving him.

9. By reason of Dennis' death during the administration of the Estate no part of the residue thereof was ever paid or distributed to or on behalf of Dennis or his estate. Instead, after payment of specific legacies and insurance proceeds in the amount of $91,431.57, the property comprising the residue of the Estate less debts, funeral and administration expenses and state inheritance taxes, and the amount of $5,000 still being retained by the plaintiff herein for the purpose of securing the costs and expenses of pursuing this action, was paid and distributed to the organizations listed in Finding of Fact number 6, in accordance with the provisions of Item XII of the Last Will and Testament of Bess M. Kelly.

10. On February 19, 1954, the Executor timely filed with the District Director of Internal Revenue, at Columbus, Ohio, (hereinafter referred to as the "Director") an estate tax return (Form 706) for the Estate. Thereafter, on May 26, 1954, the Executor timely filed an amended estate tax return (Form 706) with the Director.

11. On the original and amended estate tax returns election was made to value the property of the Estate as of the date one year after the death of Bess M. Kelly, pursuant to the provisions of Section 811(j) of the Internal Revenue Code, 26 U.S.C. § 811(j).

12. No deduction was claimed on either the original or amended estate tax return for the amount of the residuary estate passing to the organizations described in Finding of Fact number 6. However, statements were attached to said returns to the effect that the liability for tax was disputed and that a claim for refund would be filed.

13. The original estate tax return filed February 19, 1954, reported a total gross estate of $877,277.47 and estate tax due in the amount of $213,145.54. The estate tax shown as due on the original estate tax return was paid by the Estate on the following dates:

| | |
|---|---|
| February 25, 1954 | $116,145.54 |
| March 22, 1954 | 45,216.35 |
| May 27, 1954 | 2,323.61 |
| February 7, 1955 | 42,000.00 |
| May 31, 1955 | 7,460.04 |
| TOTAL TAX | $213,145.54 |
| May 31, 1955 | 1,562.52 (Interest) |
| TOTAL | $213,708.06 |

14. On March 9, 1954, the Executor timely filed with the Director a claim for refund of estate tax (Form 843) in the amount of $212,010.47.

15. The amended estate tax return filed May 26, 1954 disclosed additional items includible in the gross estate in the total amount of $6,537.57, increasing the gross estate to the amount of $883,815.04. The additional items consisted of insurance ($6,137.57) and miscellaneous property ($400.00).

16. Subsequent to the filing of the original return and the claim for refund of March 9, 1954, the Director undertook examination of the estate tax liability of the Estate. On February 17, 1956, the Director mailed to the Estate Form 1200 (commonly known as a "30-day letter") which proposed the disallowance in full of the claim for refund of March 9, 1954, and the assessment of a deficiency in the amount of $66,432.02. In arriving at the proposed deficiency, the Director in-

creased the value of the gross estate by the amount of $179,766.30. Included in the adjustments were the items of insurance and miscellaneous property which had previously been disclosed by the Estate in the amended estate tax return filed May 26, 1954.

17. After negotiations with the Appellate Division, Internal Revenue Service, Cincinnati, Ohio, the Executor, on December 13, 1956, submitted an offer to settle the estate tax liability of the Estate by consenting to the assessment of a deficiency in estate tax in the amount of $24,978.45. The offer expressly reserved the right to prosecute a claim for refund involving the subject matter of the instant case.

18. On December 26, 1956, the Appellate Division, Internal Revenue Service, Cincinnati, Ohio, mailed to the Executor its acceptance of the offer of settlement referred to above. The settlement reduced the adjustments proposed by the Director by the amount of $82,986.30. No change was made to the Director's adjustments of insurance and miscellaneous property, the items previously disclosed in the amended estate tax return.

19. On January 10, 1957, the Director, by formal notice of disallowance, disallowed the claim for refund of March 9, 1954 in its entirety after consideration of same on its merits.

20. The deficiency in the amount of $24,978.45 plus interest in the amount of $4,353.09, or a total of $29,331.54, was paid by the Estate on February 7, 1957.

21. On August 7, 1957, the Executor timely filed with the Director a claim for refund (Form 843) of estate tax plus interest in the total amount of $29,331.54.

22. On October 10, 1958 the Director, by formal notice of disallowance, disallowed the claim for refund of August 7, 1957, in its entirety after consideration of same on its merits.

23. On December 17, 1958, the plaintiff herein caused to be duly and timely filed a complaint for the recovery of the estate taxes in the amount of $241,-342.01 made the subject of the two claims for refund referred to herein, and caused summons to be issued thereon.

## DISCUSSION

The general rule of law is that the estate tax is determined as of the date of the testatrix's death. In this case, the testatrix died on November 24, 1952. It is clear that if the charities here involved had been entitled to specific and ascertainable amounts at the date of death of Bess M. Kelly, the deduction sought by plaintiff would have been proper and allowable. However, in this case the amount passing to the charities did not become certain until February 12, 1953, the date of Dennis' death.

The issue in this case is whether under the provisions of § 812(d) of the Internal Revenue Code of 1939 the Estate of Bess M. Kelly is entitled to a deduction, in the determination of the federal estate tax, for bequests which passed under the Will of Bess M. Kelly to certain charitable organizations.

Section 812(d) provides that the value of a taxable estate should be determined by deducting from the value of the gross estate the

" * * * amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return * * *) to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * *."

The crux of plaintiff's argument is contained in the following excerpt from its brief:

" * * * that the bequest which passed to charity did so solely under the will of Bess M. Kelly, prior to the time they could have been accepted and enjoyed by Dennis. At his death, Dennis would not be enti-

tled to possession or enjoyment of the residue, and because of his age, was not capable of formally disclaiming the bequest should he have chosen to do so. However, death made the decision for him and effectively shifted the residue not from him to the charity but from the Estate of Bess M. Kelly. At the time of Dennis' death the residue of the Estate was in a status of suspense pending his survival to age twenty-one. The effect of death was the precise equivalent of 'disclaimer'."

█ While it is certainly true that the death of Dennis had the same effect as an *irrevocable disclaimer would have had,* i. e., the charities received legal title to the residue, it is beyond dispute that the accepted definition of the word "disclaimer" envisions a conscious, voluntary act. Black's Law Dictionary (4th Ed. 1951) at page 550, defines disclaimer as

"* * * the repudiation or renunciation of a claim or power invested in a person for which he formally alleged to be his. The refusal, or rejection of an estate or right offered to a person. The disavowal, denial, or renunciation of an interest, right, or property imputed to a person or alleged to be his."

█ The word "disclaimer" has an ordinary and commonly understood meaning and the statute under consideration is clear and unambiguous; therefore, though the Court is aware of the desire of Congress to aid those who are charitably inclined, the word must be given its ordinary and commonly understood meaning.

Congress itself appears to have realized that death was not equivalent to a disclaimer and subsequently § 2055 of the Internal Revenue Code of 1954, 26 U.S.C. § 2055, which is the equivalent of § 812 (d) of the Internal Revenue Code of 1939, was amended to include the following language:

"For the purposes of this subsection, the complete termination be-fore the date prescribed for the filing of the estate tax return of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be an irrevocable disclaimer with the same full force and effect as though he had filed such irrevocable disclaimer."

█ Since Congress failed to enact language similar to the above as part of § 812(d), this Court must conclude that the death of Dennis was not equivalent to an *irrevocable disclaimer.* Therefore, the determination of estate tax in this matter, i. e., the propriety of the charitable deduction under § 812(d), must be made in accordance with the general rule of law—the estate tax is determined as of the date of the testatrix's death.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and the parties.

2. The general rule of law is that the estate tax is determined as of the date of the testatrix's death. Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929).

3. Disclaimer is "the repudiation or renunciation of a claim or power invested in a person for which he formally alleged to be his. The refusal, or rejection of an estate or right offered to a person. The disavowal, denial, or renunciation of an interest, right or property imputed to a person or alleged to be his." Black, Law Dictionary (4th Ed. 1951) at page 550.

4. Where a word has an ordinary and commonly understood meaning and the statute under consideration is clear and unambiguous, the word must be given such ordinary and commonly understood meaning. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1946) and Thomas v. United States, 189 F.2d 494 (C.A.6th 1951).

5. Under the provisions of § 812(d) of the Internal Revenue Code of 1939 an estate is not entitled to a deduction, in determining the federal estate tax, for the amounts which pass to charitable organizations under the will of the decedent where a legatee dies prior to the date prescribed for the filing of the estate tax return though upon his death that which he would have received passes to the charitable organizations under the will.

6. Under § 812(d) of the Internal Revenue Code of 1939, though death has the same effect as an irrevocable disclaimer, it cannot be assumed that Congress meant to include death within the term "irrevocable disclaimer".

### JUDGMENT

It is therefore ordered, adjudged and decreed that judgment should be and it hereby is entered in favor of the defendant, The United States of America, and against plaintiff.