Helen L. TYLER, Administratrix of the Estate of Donald M. Tyler, Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 72–1068.

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1972.

Garrett Logan, Tulsa, Okl. (Donald P. Moyers, Tulsa, Okl., and Thomas W. Brown, Bartlesville, Okl., with him on the brief), for appellant.

Anne Belanger, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, and William K. Hogan, Attys., Tax Div., Dept. of Justice, and Nathan G. Graham, U. S. Atty., of counsel, with her on the brief), for appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This is an action for refund of federal estate taxes paid on the estate of Donald M. Tyler, deceased, in the amount of $362,804.01 plus interest of $71,153.69. The facts are stipulated and the sole issue in the case is whether or not the testamentary disposition by the decedent to his surviving spouse qualifies for the marital tax deduction under 26 U.S.C. § 2056. The trial court held that it did not qualify for the deduction, and from that judgment, plaintiff appeals.

Donald M. Tyler died testate and his will was duly admitted to probate. Under paragraph IX of the will, the testator made the following disposition of the residue of his estate:

". . . I give, devise and bequeath as follows:

"(a) unto my beloved wife, Julia Cherry Tyler, the one-third part thereof, to be used, controlled, encumbered, or disposed of by her without any restrictions whatsoever; provided, that if any such property shall remain in her possession at the time of her death, the same shall go to, and I hereby give, devise and bequeath the same unto my two children, John W. Tyler and Helen Tyler Beesley, . . . ."

The other two one-third portions of the residue were given outright to John W. Tyler and Helen Tyler Beesley.

There was an antenuptial agreement between the decedent and his wife which we have considered but do not find it to be significant in resolving the issue.

It is appellant's position that Julia Cherry Tyler was given the unrestricted power to alienate her entire one-third portion, either by an inter vivos transfer or by testamentary disposition, and that either power would qualify the portion she received for the marital deduction under 26 U.S.C. § 2056(b)(5). It is the Government's position, and the trial court found, that this was a "terminable interest" under that statute since Mrs.

Tyler's powers of disposition, if any, were ineffective to cut off the rights created in the children who it asserts were remaindermen.

■ The relationship of the state laws and decisions to federal laws in cases of this nature is clear. The state acts and decisions determine the nature of the interests and rights, while the federal revenue acts direct what interests or rights shall be taxed and how. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035 (1940); United States v. Mappes, 318 F.2d 508 (10th Cir.); In re Sweet's Estate, 234 F.2d 401 (10th Cir.). The parties thus agree that the law of Oklahoma determines what interests and rights were created in Mrs. Tyler under the terms of this will.

The most recent decision by the Supreme Court of Oklahoma concerning the rights and powers of a beneficiary under a will provision such as the present one is that of English v. Rainwater, 403 P.2d 449 (Okl.1965). The will in that case devised the residue of the testator's estate to his wife, Hattie R. English:

> ". . . [T]o be and become hers for and during her natural life, with full power to her the said Hattie R. English, to sell, trade, traffic and dispose of any or all of the same, as freely as though she were the absolute owner thereof in fee simple absolute."

The succeeding clause of the will then provided that upon Hattie R. English's death, all property bequeathed and devised to her "of which she is the owner" was devised and bequeathed to testator's seven named children in equal shares. The testator continued:

> "That nothing herein shall be construed to prevent or interfere in any manner with my wife Hattie R. English selling or disposing of any part of said property."

After the testator's death, Hattie R. English executed and delivered a deed to the real estate received by her under the provisions of the will, and some of the children of the decedent challenged the validity of the conveyance. In ruling in favor of the widow's grantees, the court classified the interest created by the English will as follows:

> "The heretofore quoted terms of the will involved in this case wholly fail to disclose any testamentary intention to limit the devise upon any condition. Not only did the second clause of the will unequivocally vest Hattie R. English with absolute and unconditional power to dispose of the property, but the third clause reiterated that, although any property of which she died seized should descend to the named remaindermen, nothing therein should be construed as affecting the wife's right to sell or dispose of any part of the property. Under these circumstances Hattie R. English was vested with an absolute fee simple title which could be conveyed. This results from the fact that she was given a life estate coupled with the absolute power of disposition."

We believe that the language used in the Tyler will was sufficiently similar to that of the English will so as to manifest a similar intent on the part of the testator, and to lead to the same legal conclusions. The phrase "without any restrictions whatsoever" following the grant of the powers of disposition in the Tyler will are equivalent in purpose and effect to the last quoted clause of the English will. Furthermore, by using the words, "if any of such property shall remain . . .," Mr. Tyler clearly recognized the possibility that the life tenant would fully exercise the powers he had given her and dispose of her entire one-third share. There was not only the contemplated disposition of all, but there is no indication in the will of any concern over the proceeds of a sale. The will also refers to "selling" or "disposing" and thus permits gifts. She could

therefore "dispose" of it freely without limitation.

The Government cites and relies on the cases of In re Inheritance Tax on Dale's Estate, 167 Okl. 240, 29 P.2d 88 (1934), and Darden v. Griffis, 350 P.2d 254 (Okl.1960).

In In re Inheritance Tax on Dale's Estate, 167 Okl. 240, 29 P.2d 88, the court considered a joint will of a husband and wife in a situation where both had died within five months of each other and the estate of the first to die was still open. The question was whether state inheritance tax should be assessed successively in both estates. The will there provided:

"Upon the death of either of us, the survivor shall take and become possessed absolutely of the entire estate herein designated and may use and dispose of the same in such manner as he or she may desire, may make gifts of money or property, or purchase other property as he or she may desire; but upon the death of such survivor the property of the estate still remaining of which the survivor died seized, shall be divided and descend to the following named parties who are hereby designated to receive the same. . . ."

The Oklahoma court held that the survivor took a life estate with an absolute power of disposition by gift, sale, or conveyance, but not a fee simple estate. She did not exercise the power to dispose of the property, thus there was no state inheritance tax on her estate. The beneficiary thus had the unrestricted power to dispose of the property by an inter vivos conveyance. In this regard it is not dissimilar to English v. Rainwater, 403 P.2d 449 (Okl.1965), except in English there was additional language, ". . . nothing herein shall be construed to prevent or interfere . . . with my wife . . . selling or disposing of any part of said property." The provisions relating to the power of disposition were explicit and in English the beneficiary did convey.

In Darden v. Griffis, 350 P.2d 254 (Okl.1960), a quiet title action, the beneficiary, as in Dale's Estate, died without making a conveyance. There was no language in the will expressing an intent that the beneficiary have complete freedom in disposing of the property although it expressly passed "free and clear of restrictions." The court nevertheless said that there was no inter vivos limitation although this is dictum. In the case before us it is apparent that the testator's intention was to give an unrestricted power of disposition by the use of direct and explicit language. The case in this respect is different from Darden and clearer. See also Shippy v. Elliott, 327 P.2d 645 (Okl.), and Lyons v. Luster, 359 P.2d 567 (Okl.).

Therefore, under the terms of the Tyler will, Julia Cherry Tyler was given the power to convey inter vivos absolutely and without limitation the entire title to the one-third interest in the residue of the estate passing to her under the will. Although not explicitly so stated in its findings of fact and conclusions of law, the trial court was apparently of the opinion that Mrs. Tyler did not have the power to dispose of her interest by will since the testator named his children as "remaindermen." Accordingly, it held that Mrs. Tyler's interest was not exercisable "in all events" as required by 26 U.S.C. § 2056(b)(5), and, therefore, did not qualify for the marital deduction. We disagree with the trial court's determination.

In the case of United States v. Spicer, 332 F.2d 750 (10th Cir.), this court construed a joint will which contained the following provision:

"[The residue shall pass to the survivor] . . . and such survivor

shall have the right to sell and convey the property so devised, and to invest and re-invest the proceeds thereof as the survivor shall deem to the best interest of our estate. But any such property or investments, in whatever form they remain, at the death of the survivor of us, shall pass to, and we devise and bequeath the same as hereinafter provided."

In construing the will according to the law of Kansas, this court decided that the surviving spouse was to hold a life estate with an unrestricted right of disposition during his or her lifetime. As indicated above, we have found that the Tyler will construed according to Oklahoma law had exactly the same effect as to freedom of disposition. In the Spicer case we went on to hold that such an interest was sufficient to qualify for the marital deduction, no requirement as to testamentary power of disposition being made. See also Batterton v. United States, 406 F.2d 247 (5th Cir.); Hoffman v. McGinnes, 277 F.2d 598, 90 A.L. R.2d 405 (3d Cir.); McGehee v. Commissioner of Internal Revenue, 260 F.2d 818 (5th Cir.); Burnett v. United States, 314 F.Supp. 492 (D.S.C.), aff'd mem., 436 F.2d 975 (4th Cir.); First National Bank of Janesville v. Nelson, 233 F.Supp. 860 (E.D.Wis.), aff'd 355 F.2d 546 (7th Cir.); Nettz v. Phillips, 202 F.Supp. 270 (S.D.Iowa); Carlson v. Patterson, 190 F.Supp. 452 (N.D.Ala.). In Burnett v. United States, 436 F.2d 975 (4th Cir.), the court said that the power of disposition need not include a power of testamentary disposition to qualify but it must be an unlimited power. To the contrary, see Pipe's Estate v. Commissioner of Internal Revenue, 241 F.2d 210 (2d Cir.), a 1957 case.

In summary, we find that under the terms of this will, Mrs. Tyler received an estate with an absolute and unlimited power of inter vivos disposition, and that such an interest is sufficient to qualify for the marital deduction. Consequently, the judgment of the trial court is reversed.