ESTATE OF MEDORA L. SALTER, NON COMPOS MENTIS,
MISSISSIPPI BANK & TRUST COMPANY, CONSERVATOR (JOHN A.
SALTER, SUCCESSOR CONSERVATOR), TRANSFEREE, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8531-72.    Filed February 11, 1975.

*Joe Jack Hurst* and *James S. Armstrong,* for the petitioner.
*Roy S. Fischbeck* and *Andrew S. Coxe,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined that the Estate
of Medora L. Salter, non compos mentis, is liable as transferee for
a deficiency of $22,552.99 in the estate tax due from the estate of
Cary W. Salter, Sr. (hereinafter sometimes referred to as
decedent). Petitioner acknowledges that it is transferee of the
assets of the estate of Cary W. Salter, Sr., within the meaning of
sections 6324 and 6901,[1] but alleges that respondent erred in
determining a deficiency in the estate tax of decedent's estate.
Other issues having been settled, one issue remains: Whether a
bequest in decedent's will of property to his wife qualifies for the

[1] All section references are to the Internal Revenue Code of 1954, as in effect at the time
of decedent's death, unless otherwise noted.

marital deduction allowed by section 2056. The answer turns upon two more specific issues:

1. Whether decedent's will, which devised all of his property to his wife, with any residue at her death to be divided equally among decedent's children, gave his wife a life estate with a general power of appointment which satisfies the requirements of section 2056(b)(5); and

2. Whether the children of decedent effected disclaimers under section 2056(d)(2) when they entered appearances individually in a Mississippi Chancery Court proceeding, joined in their mother's petition to construe the will of decedent to grant their mother a life estate with absolute power of disposition over decedent's property, and agreed to be bound by any decree entered by the court.

All the facts are stipulated.

Cary W. Salter, Sr., also known as Cary Weathersby Salter, Sr., died testate on March 1, 1968, at the age of 80 years, while a resident of Noxubee County, Miss. He and Medora L. Salter, also known as Medora Lenow Salter (sometimes herein Mrs. Salter or the surviving widow), were married on May 24, 1917. They had four children who survived decedent: Cary Weathersby Salter, Jr., Flora Elizabeth Salter Tumlinson Emerson, Medora Lenow Salter Weaver, and John A. Salter II. The surviving widow was 71 years of age when decedent died.

On April 15, 1968, decedent's will was proved and admitted to probate in the Chancery Court of Noxubee County, Miss. (hereinafter the Chancery Court), and Mrs. Salter was appointed and qualified as administratrix of his estate. The will contained the following pertinent provision:

ITEM TWO: It is my desire that all of my property, both real, personal or mixed, which I may own, or over which I may have the power of testamentary disposition at my death, shall go to my wife, Medora Lenow Salter, with any residual after her death to my hereinafter named children in equal parts. My children are: Cary Weathersby Salter, Junior, Flora Elizabeth Salter Tumlinson, John A. Salter, II, Medora Lenow Salter Weaver.

On May 8, 1968, Mrs. Salter filed a "Petition To Construe Will" in the Chancery Court, praying, among other things—

(a) That the court will order and decree that the legal effect of the last will and testament of Cary Weathersby Salter, Sr., Deceased, was to vest title to all of his personal and real property in Medora Lenow Salter, as life tenant with right of absolute disposition during her lifetime without the necessity for any remaindermen joining with her in the conveyance of the same;

(b) That the court will decree that the children of the said decedent named in Item 2 have only a remainder in such real and personal property as the said life tenant shall not have disposed of during her lifetime, said remainder to be shared in equal parts by said children * * *

Each of the four children signed and acknowledged a separate paper entitled "Entry of Appearance," which was filed in the proceeding and contained the following:

I * * * [name of child], a surviving child of Cary Weathersby Salter, Sr., Deceased, one of the defendants named in the petition of Mrs. Medora Lenow Salter to construe the will of Cary Weathersby Salter, Sr., Deceased, do hereby enter my appearance in this cause, join in the petition of the petitioner and agree to be bound by any judgment or decree that may be entered by the court. I further represent to the court under oath, that I am above the age of 21 years and am under no legal incapacity.

On September 19, 1968, the chancellor of the Chancery Court entered an "Order Construing Will," which in pertinent part was as follows:

IT IS ORDERED, ADJUDGED AND DECREED, as follows, to wit:

1. The court finds that by the terms of the provisions of said will as recited in Item 2 of the will, the surviving widow, Medora Lenow Salter is vested with the following rights:

(a) The right to receive all of the income from the entire interest of all of the property, both real, personal or mixed, devised and bequeathed by the will of Cary Weathersby Salter, Sr., Deceased;

(b) That all of said income is payable to her as the same is earned and received;

(c) That Medora Lenow Salter has a complete, absolute and full power of disposition of the entire interest of said property to either herself or her estate;

(d) That the full power of disposition that is vested in Medora Lenow Salter is exercisable by her alone; and

(e) The entire interest devised and bequeathed to her is not subject to a power in any other person to appoint any part to any person other than the surviving spouse.

2. That Medora Lenow Salter is vested with a life estate in all of the property of the decedent plus the full right to dispose of any or all of the property acting exclusively by herself and without the necessity of the consent of any of the remaindermen during her lifetime.

Thereafter, on December 1, 1969, decedent's Federal estate tax return was filed, claiming a marital deduction of $122,628.33.

On June 22, 1970, the Chancery Court entered a decree approving the final accounting, authorizing distribution of the estate, and discharging the administratrix. All of the assets of decedent's estate were transferred to Mrs. Salter in her individual

capacity. The assets so distributed to her had an aggregate value of at least $159,131.43.

On December 10, 1971, Mrs. Salter was declared by a local Chancery Court to be incompetent to handle her own affairs, and the Mississippi Bank & Trust Co. of Jackson, Miss., was appointed conservator of her estate. On February 12, 1973, John A. Salter was appointed conservator of the estate and person of Medora L. Salter, thereby replacing the Mississippi Bank & Trust Co.

By statutory notice of liability dated August 23, 1972, respondent notified the conservator (1) that he had determined that the marital deduction claimed on decedent's Federal estate tax return was not allowable to the extent of $81,385.77 because the interest of the surviving widow in property passing under decedent's will was a terminable interest as defined in section 2056, and (2) that he proposed to make an assessment of transferee liability against petitioner in the amount of $22,552.99, plus interest as provided by law.

Section 2056 allows a deduction, not to exceed 50 percent of the decedent's adjusted gross estate, for the value of any interest in property which "passes or has passed from the decedent" to his surviving spouse (but only to the extent such interest is included in the decedent's gross estate). Under section 2056(b)(1), however, this marital deduction, as a general rule, is not allowed with respect to a "terminable interest," i.e., an interest which will terminate or fail on the lapse of time, or on the occurrence of an event or contingency, or on the failure of some event or contingency to occur. One important exception to this general rule on terminable interests, provided in section 2056(b)(5),[2] is

---

[2] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.
  (b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—
    * * *
  (5) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—
    (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
    (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

that the value of a life estate coupled with a general power of appointment may qualify for the deduction.

The Chancery Court decree interpreted decedent's will to meet each of the requirements of section 2056(b)(5). Indeed, the decree is cast in almost precisely the same terms as section 20.2056(b)-5, Estate Tax Regs. The parties agree, however, that under the rule of *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), the Chancery Court decree is not controlling as an interpretation of decedent's will. Rather, the will must be interpreted in the light of the decisions of the Mississippi Supreme Court.

Petitioner contends that the will, properly interpreted under Mississippi law, gave Mrs. Salter an absolute power of disposition over decedent's estate so that her interest qualifies for the marital deduction under section 2056(b)(5). Respondent maintains that, under Mississippi law, the surviving widow received a life estate in decedent's property, coupled with a power to dispose of the property for the limited purpose of providing for her support and maintenance. Since this power will terminate at the surviving widow's death, her interest was a terminable one within the meaning of section 2056(b)(1).

We do not think decedent's will gave Mrs. Salter an absolute power to dispose of decedent's property. Petitioner relies upon several cases which pronounce the general rule that an absolute devise may not be diminished to a life estate by succeeding language less definite than the devising clause. *Wheeler v. Williams,* 235 Miss. 142, 108 So.2d 578 (1959); *In Re Vail's Will,* 228 Miss. 151, 87 So.2d 68 (1956). In the majority of the cases cited by petitioner, the will contained an absolute devise of a fee in one clause and an indefinite reduction of that estate in a succeeding clause, *Frierson v. Moorhead,* 211 Miss. 811, 51 So.2d 925 (1951), or a clear devise followed by what the court deemed equivocal precatory language, *Wheeler v. Williams, supra.* In other cases, in which the court held the devisee was entitled to an absolute power of disposition, the devising clause was separated from the subsequent limitation of power over what remained at the first taker's death. *Morman v. Thornhill,* 240 So.2d 258

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

(Miss. 1970); *Cooper v. Simmons,* 237 Miss. 630, 116 So.2d 215 (1959); cf. *Monroe v. Holleman,* 185 So.2d 443 (Miss. 1966).

The holdings of those cases are inapposite. Decedent's will contains no absolute devise in fee. In the same sentence in which the will states that the decedent's property "shall go to my wife," the will limits Mrs. Salter's disposition of the property by providing that "any residual after her death" shall go to "my hereinafter named children in equal parts." The rule in Mississippi is that, in the absence of clear language to the contrary, a life tenant's power of disposition is limited. *Old Ladies' Home Assn. v. Miller,* 217 Miss. 187, 63 So.2d 786 (1953).

In *Vaughn v. Vaughn,* 238 Miss. 342, 118 So.2d 620, 621 (1960), the Mississippi Supreme Court construed the following provision:

I will, devise and bequeath unto my said wife the entire residue of my property of every kind, and any of same that is not consumed by her in her lifetime at her death to go to my said three children, share and share alike * * *

The court held that the devisee received a life estate with a limited power of disposition for maintenance and support.[3] In view of the close similarity between the devise in *Vaughn v. Vaughn, supra,* and the one herein at issue, we think that the Mississippi Supreme Court would hold that Mrs. Salter received a life estate with a limited power of disposition. Since the will gave Mrs. Salter only a life estate and contains no clear language giving her unlimited powers to dispose of decedent's property during her lifetime or at her death, we think her powers were clearly so limited. *Old Ladies' Home Assn. v. Miller, supra.*

Petitioner's other argument is that the Salter children's participation in the Chancery Court proceeding—the filing of the entries of appearance in which they joined in Mrs. Salter's petition and agreed to be bound by any decree entered by the court—was a disclaimer of part of their interests under decedent's will within the meaning of section 2056(d)(2). As a result of that disclaimer, petitioner maintains, Mrs. Salter acquired an

---

[3] In so holding, the court stated (*Vaughn v. Vaughn,* 238 Miss. 342, 348, 118 So.2d 620, 623 (1960)):

"It is a general rule, followed by the courts with practical unanimity, that where there is a devise or bequest to one in general terms only, expressing neither fee nor life estate, and a subsequent limitation over of what remains at the taker's death, if there is also given to the taker an express or implied power of disposition which is not absolute, or is limited or restricted as to its exercise, the devise is construed to pass a life estate only. * * *"

absolute power of disposition over the entire estate so that her interest qualifies for the marital deduction under section 2056(b)(5). Respondent contends that the Salter children's participation in the Chancery Court proceeding and the resulting decree did not constitute a disclaimer within the meaning of section 2056(d)(2). We agree with respondent.

Section 2056(d)(2) is as follows:

(d) DISCLAIMERS.—

\* \* \*

(2) BY ANY OTHER PERSON.—If under this section an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then—

(A) if the disclaimer of such interest is made by such person before the date prescribed for the filing of the estate tax return and if such person does not accept such interest before making the disclaimer, such interest shall, for purposes of this section, be considered as passing from the decedent to the surviving spouse, and

(B) if subparagraph (A) does not apply, such interest shall, for purposes of this section, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made.

Significantly, this language does not permit a decedent's family members to augment the marital deduction by directly transferring additional property or interests in property to the surviving spouse. Rather, the section applies only where "as a result" of a "disclaimer" the surviving spouse is "entitled to receive" such additional interests. The meaning of the term "disclaimer" is, therefore, crucial.

A disclaimer has been defined as the "disavowal, denial, or renunciation of an interest, right, or property imputed to a person or alleged to be his." *City Nat. Bank & Trust Co. of Columbus v. United States*, 203 F. Supp. 398, 402 (S.D. Ohio 1962), affd. 312 F.2d 118 (C.A. 6, 1963), certiorari denied 373 U.S. 949 (1963). It must be a complete and unqualified refusal to accept property from a decedent. *Grace M. Parker*, 62 T.C. 192, 199 (1974). The term contemplates a unilateral act, "a solo performance," *Bel v. United States*, 452 F.2d 683, 693 (C.A. 5, 1971), by a person other than the surviving spouse.

In the entries of appearance filed in the Chancery Court, the children did not disavow, deny, or renounce the powers needed by

Mrs. Salter to qualify her interest for the marital deduction under section 2056(b)(5). In those documents, the children did not refuse to accept anything. In response to the Petition To Construe Will filed by Mrs. Salter, the children joined in her petition and agreed to be bound by any decree entered by the Chancery Court. Literally read, the entries of appearance merely left the determination of the rights of all the parties under the will to the judgment of the Chancery Court. Indeed, the decree actually entered by the Chancery Court defined Mrs. Salter's powers in broader and more precise terms than had been requested in the petition.

Petitioner argues, however, that the entries of appearance led to the Chancery Court's "consent judgment" and that a consent judgment is one of the means employed in Mississippi for disclaiming interests in property. In other words, petitioner maintains that the Chancery Court decree did not necessarily reflect the independent judgment of that court as to the meaning of the will, but, instead, confirmed the family's agreement that Mrs. Salter should have the crucial powers.

Citing *Guthrie v. Guthrie,* 233 Miss. 550, 102 So.2d 381 (1958), *Asher v. Hart,* 212 Miss. 749, 55 So.2d 447 (1951), and other authorities on Mississippi law, petitioner devotes much of its briefs to the proposition that the Chancery Court decree was a consent judgment, being in the nature of a contract and having all the attributes of a judgment obtained through litigation.[4]

It is true that since the decision in *Parker v. Broadus,* 128 Miss. 699, 91 So. 394 (1922), the Mississippi courts have held that where a will contains no trust or other limitations, all the beneficiaries may renounce the will and divide the property according to a plan different from the one prescribed by the will. See also *Williams v. Williams,* 185 Miss. 53, 67, 187 So. 209 (1939); cf. *Stanley v. Sumrall,* 167 Miss. 714, 147 So. 786 (1933). Such family agreements on the disposition of a decedent's

---

[4] In *Guthrie v. Guthrie,* 233 Miss. 550, 556-557, 102 So.2d 381, 383 (1958), cited by petitioner, the Mississippi Supreme Court described a consent judgment as follows:

"A consent judgment acquires the incidents of, and will be given the same force and effect as, judgments rendered after litigation. It is binding and conclusive, operating as res judicata and an estoppel to the same extent as judgments after contest. *Also, being in the nature of a contract, a consent judgment should be construed as a written contract.* So in the absence of fraud, mutual mistake or collusion, a judgment by consent is binding and conclusive upon the parties and those in privity with them, to the same extent as judgments rendered upon controverted facts and after consideration thereof upon a contested trial. * * * [Emphasis supplied.]"

estate are favored by the law and will be enforced by the courts. But they are more than disclaimers or renunciations. They include the contractual agreement on how the estate will be shared. The recipient of the property in the estate becomes entitled to receive that property not as a result of a disavowal, denial, or renunciation by one or more of the family members, but as a result of the family agreement that the property will be transferred to him.

The contractual nature of the consent judgment procedure is fatal to petitioner's cause. S. Rept. No. 1599, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 801 fn. 3, which accompanied the enactment of the applicable version of section 2056(d)(2), explains:

> It is not material for this purpose whether a particular State law uses the term "disclaimer" or uses another term describing the same legal effect. All that is necessary to qualify under the bill is a refusal, made without consideration, which is valid under State law and *by reason of which the interest "disclaimed" is received by the surviving spouse either by operation of law or other provision made by the decedent.* [Emphasis supplied.]

Thus, as a result of a section 2056(d)(2) disclaimer, the property must pass to the spouse "either by operation of law or other provision made by the decedent."

Under the family agreement, confirmed by the Chancery Court, the children agreed that their respective remainder interests would be qualified by the new powers conferred upon Mrs. Salter. Under those powers, she could dispose of the property to herself or her estate without the consent of any of the children. The effect of the family agreement as approved by the Chancery Court was not a disclaimer but was a voluntary transfer by the children of those powers to Mrs. Salter. See sec. 25.2511-1(c), Gift Tax Regs.; *Krakoff v. United States,* 439 F.2d 1023, 1025 (C.A. 6, 1971); *Hardenbergh v. Commissioner,* 198 F.2d 63, 67-68 (C.A. 8, 1952), affirming 17 T.C. 166 (1951); *Estate of C. Warren Caswell,* 62 T.C. 51, 55 (1974). The crucial powers did not pass to her from decedent either by operation of law or other provision made by decedent, as required by section 2056(d)(2), but passed to her pursuant to the agreement of the children as reflected in the court decree.[5]

---

[5] The general rule is that a beneficiary of a will may not accept part of a unitary devise or bequest and reject part. *Brown v. Routzahn,* 63 F.2d 914, 916 (C.A. 6, 1933), certiorari denied 290 U.S. 641 (1933); *Bank of Delaware v. Smith,* 211 A.2d 591, 593 (Del. 1965); see also Annotation, 93 A.L.R.2d 8 (1964). We have been unable to find any Mississippi cases indicating whether that rule would permit the Salter children to qualify their

Indeed, naked disclaimers filed by the children in the Chancery Court could not have caused the powers required by section 2056(b)(5) for the marital deduction to pass to Mrs. Salter either under decedent's will or by operation of law. The will gave her only a life estate with a limited power of disposition and contained nothing, such as a residuary clause, which would have given her any additional powers or interests in case of disclaimers by the children. Consequently, any interests disclaimed by the children would have passed as intestate property, and the renounced interests of any of the respective children would have passed to the other children in equal parts, secs. 91-1-11, 91-1-13, Miss. Code Ann. (1972), with Mrs. Salter possibly receiving a child's part, sec. 91-1-7, Miss. Code Ann. (1972). As far as we have been able to ascertain, there is no provision under Mississippi law for the renunciation of intestate property. See generally cases cited in Annotation, Renunciation of benefit under statute of descent and distribution, 170 A.L.R. 435 (1947).

We hold that the entries of appearance filed by the Salter children, leading to the Chancery Court decree, were not disclaimers within the meaning of section 2056(d)(2). The additional powers conferred on Mrs. Salter by the Chancery Court decree did not pass to her from decedent and, therefore, the estate does not qualify for the disputed additional marital deduction under section 2056(b)(5).[6]

To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*

---

remainder interests by a disclaimer or renunciation. If it would not, this would be an additional reason why a family agreement was required in order to confer on Mrs. Salter the powers needed for the marital deduction allowed by sec. 2056(b)(5).

[6] Since we conclude that the will gave Mrs. Salter only a life estate with a limited power of disposition for maintenance and support, and that the Salter children did not disclaim any interests under the will, we need not enter what has been described as a conflict among the several circuits as to whether a power of testamentary disposition is essential to the allowance of the deduction. *Nettz v. Phillips*, 202 F. Supp. 270 (S.D. Iowa 1962). Compare, e.g., *Tyler v. United States*, 468 F.2d 959, 962-963 (C.A. 10, 1972), with *Pipe's Estate v. Commissioner*, 241 F.2d 210 (C.A. 2, 1957), affirming 23 T.C. 99 (1954).